UNITED STATES of America, Plaintiff-Appellee,

v.

CONSOLIDATION COAL COMPANY, a corporation, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Donald M. KIDD, Jr., an Individual, Defendant-Appellant,

Nos. 73-2086, 73-2085.

United States Court of Appeals, Sixth Circuit.

Decided Oct. 23, 1974.

William J. Melvin, Fontana, Ward, Kaps & Perry, Richard C. Addison, Columbus, Ohio, Roger Curran, H. Yale Gutnick, Edwin J. Strassburger, Rose, Schmidt & Dixon, Pittsburgh, Pa., William M. Downer, Weinman, Downer, Quinn, Adulewicz & Kerr, Steubenville, Ohio, for defendants-appellants.

William W. Milligan, U. S. Atty., James Rattan, Asst. U. S. Atty., Columbus, Ohio, John L. Murphy, Chief, Government Regulations Section, Crim. Div., Dept. of Justice, DeWitt R. Dent, B. Franklin Taylor, Jr., Richard I. Chaifetz, Washington, D. C., for plaintiff-appellee.

Before WEICK and LIVELY, Circuit Judges and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

The Appellants, Consolidation Coal Company and Donald M. Kidd, were jointly tried and convicted by a jury in the United States District Court for the Southern District of Ohio, Eastern Division, under a four count information charging them with having violated two of the Interim Mandatory Safety Standards contained in Sec. 862(a), Title 30, U.S.C. The appellants were prosecuted under the penal provisions of Sec. 819 (b) and (c) of Title 30. Separate appeals have been filed but they will be considered together in this opinion.

The Hanna Coal Company is a division of the Consolidation Coal Company, one of the appellants in this appeal. It owned, operated and controlled the Franklin No. 25 Mine in New Athens, Harrison County, Ohio. This mine is the subject of the criminal charges in this case. Donald M. Kidd was a foreman in the section of the mine which became the subject of the specific charges in the information.

Counts one and two of the information charged appellant, Consolidation Coal Co., that it

"willfully failed to support and otherwise control adequately the roof and ribs of the active underground roadways, travelways and working places in the Franklin No. 25 Mine"

for protection of persons from falls, and that it

"willfully failed to adopt a roof control plan and revisions thereof suitable to the roof conditions and mining system in the Franklin No. 25 Mine and approved by the Secretary of the Interior."

Counts three and four of the information charged that appellant, Donald M. Kidd, in his representative capacity

> "knowingly authorized, ordered and carried out the violation charged in Count I (Count II) of this information."

By separate pretrial motions to dismiss both appellants challenged the sufficiency of the information. These motions were denied and at request of the court Bills of Particulars were filed. By these Bills the Government stated in detail what it expected to prove. The appellants in these appeals claim error on the part of the trial judge in denying the motions to dismiss the information.

■■ Upon consideration of the motions, the statutes involved, herein, the four counts of the information and the arguments and briefs of counsel, we conclude that Section 862(a) supra, is not unconstitutionally vague, that it defines the offenses charged in the information with certainty, that the information sufficiently states offenses under the statute and that the information with the aid of the Bills of Particulars adequately inform the defendants of the charges they are to meet. For discussion of vague and overbroad statutes defining offenses, see Grayned v. City of Rockwood, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222.

Both appellants moved for judgment of acquittal at the close of the government's case and for judgment of acquittal n. o. v. at the close of the entire case. Consolidation Coal Company presents this question on appeal.

■ Count one of the information was framed from the second sentence of Section 862(a) of Title 30 U.S.C. as follows:

> "The roof and ribs of all active underground roadways, travelways, and working places shall be supported or otherwise controlled adequately to protect persons from falls of the roof or ribs."

Count two was framed from the third sentence of the same section reading as follows:

> "A roof control plan and revisions thereof suitable to the roof conditions and mining system of each coal mine and approved by the Secretary shall be adopted and set out in printed form within sixty days after the operative date of this subchapter."

We hold as did the trial judge that this language may be the subject of two separate counts.

The substance of the charges is that the corporate appellant, Consolidation Coal Company, committed the violations. Specifically, the basis of the charges is that at about noon on June 14, 1972, there was a roof fall in what is denominated as room 52 of the mine.

The government's chief witness was one Paul G. Gregor. Mr. Gregor was a coal mine inspector employed by United States Bureau of Mines. He had had experience in various phases of mine work and special training for his job as an inspector. At about 4:45 P.M. of the afternoon of the roof fall Mr. Gregor went into the mine with several other men. With him entering the mine were Mr. Young, his supervisor, Mr. Wood, his fellow inspector, representing the bureau of mines, Mr. Henry Roberts of the State of Ohio Division of Mines, mine workers Walter Ludwig and John Yemich, of the Union Safety Committee and mine worker Glenn Donaldson. Of the witnesses who testified only Walter Ludwig, Glenn Donaldson and Harold Fletcher had been in room 52 before the roof fall.

Mr. Gregor testified in detail concerning the condition of room 52 at the time he was in it after the roof fall. He identified drawings as exhibits, testified as to overhangs, roof bolts, rib and roof supports, made measurements and otherwise described with exactness the condition in which he found this room. This apparently was the government's theory of showing that the room did not meet

required safety standards before the roof fall. No one with prior knowledge of the condition of room 52 testified that this condition after the roof fall would not have met the proper safety standards before the roof fall. Mr. Gregor testified that there was a roof plan for room 52 which had been approved by the Secretary. This is shown by exhibit 2 and the documents contained therein. The district judge held that not only must there be an approved roof plan but it must have been shown to have been put into effect.

For the purposes of this discussion we assume that the condition of room 52 prior to the roof fall did not meet the required safety standards and that the approved roof plan had not been put into effect.

The willful violations of Consolidation can be shown only through the action of an authorized agent. Mr. Duane Landacre, employed by appellant, Consolidation Coal Company, as Coordinator of Personnel, testified from his records that appellant, Donald M. Kidd, had been employed by Consolidation since June 1, 1964 and that he had been a foreman since May 1, 1969. He did not testify as to what his authorized duties as a foreman were. Nor is there any testimony on the part of management as to Mr. Kidd's authorized duties.

Mr. Gregor testified that he had a conversation with Mr. Kidd at a conference in the superintendent's office. He stated that Mr. Kidd said that on the day of the fall Mr. Ball was only in his fourth day of working for him and that if he had known that he had had only eleven or twelve days experience in the mine he would not have sent him into that working place alone. He further testified that Mr. Ball left the bottom about 7:40 A.M. on the day of the fall and arrived at the working section about 8:00 A.M. Apparently Mr. Kidd assigned shot firing duties to Mr. Ball on this occasion. By 11:30 A.M. he had shot down six cuts of coal. He then went to lunch and Mr. Kidd said as he was going past the dinner hole Mr. Ball asked him what he was to do after lunch. Mr. Kidd told him to begin setting temporary roof supports in number 53 room.

Later Mr. Kidd saw Mr. Ball in number 53 and he told him when he finished setting the posts there to go into 52 and just follow the loading machine. When Mr. Kidd went into 52, he could not observe the condition of the roof because the loading machine was there. Mr. Gregor further testified that Mr. Kidd said that at 12:30 P.M. he was out on the loading ramp when he heard Mr. Donaldson yell and he hurried into the room (presumably 52) to see what had happened. This apparently was the occasion of the roof fall.

Glenn Donaldson testified that at the time of the roof fall he was working with a crew of eleven men including Mr. Ball and Mr. Kidd as foremen. His testimony that Mr. Kidd, the foreman, directed the work of the section does not aid in determining what authority or what authorized responsibility he had for seeing that there was compliance with the statutory safety requirements. At the time of the accident Mr. Donaldson was just entering number 52 with his bolting machine. This was apparently to bolt up the roof following the six shots of coal that were shot down by Mr. Ball. Mr. Harold Fletcher, a mine loader, testified that no safety posts or jacks could be installed in a room until he gets the coal all loaded out and the place cleaned up. He apparently had just gone through 52 after the six shots of coal had been shot down at 11:30 A.M.

Mr. Gaither Knight employed by U. S. Bureau of Mines, a Federal coal mine inspector, roof control, testified that there was an approved roof control plan for Franklin No. 25 Mine, approved in December 1971. There being a roof control plan, count two of the information must fail unless the trial judge is right in holding that not only must there be a plan but it must be shown to have been put into effect.

■ Upon consideration of all of the evidence we conclude that there is a total failure of proof to show that Donald M. Kidd willfully or even knowingly violated, or authorized any one to violate, the Act as charged in the information. Kidd was only a foreman for coal mining operations and was in charge of a crew of miners. There was no evidence that he ever had anything to do with policy matters or managerial functions of Consolidation.

The evidence is that Mr. Ball shot down six cuts of coal by 11:30 A.M. and that witness Fletcher followed this with his loader. At the time of the fall witness Donaldson was just going into 52 with his bolting machine. We cannot tell from this whether shooting the cuts of coal would destroy the existing roof plan so that a new one would have to be installed or whether an approved roof control plan should withstand the shooting of coal.

Another claim made by appellant, Consolidation Coal Co., is that the trial judge erred in his instruction to the jury on willfulness and in refusing to give appellant's proposed instruction concerning the elements of the crime. The proposed instruction:

"An act is done willfully if done voluntarily and purposely with the specific intent to do that which the law forbids; that is to say, with bad purpose either to disobey or to disregard the law. Willfullness includes an evil motive."

The instruction as given is as follows:

"the failure to comply with the safety standard under the Federal Coal Mine Health and Safety Act of 1969 is willful if done knowingly, purposely or obstinately by a coal mine operator who, having a free will or choice, either intentionally disregards the standard or is plainly indifferent to its requirements."

Congress provided for both a civil and a criminal penalty for violations of the safety standards prescribed by the Act. Sec. 819(a)(1) provides for a civil penalty and 819(b) defines the criminal offense.

"Any operator who willfully violates a mandatory health or safety standard, or knowingly violates or fails or refuses to comply with any order issued under 814 of this title, or any order incorporated in a final decision issued under this subchapter except an order incorporated in a decision under subsection (a) of this section or section 820(b)(2) of this title, shall, upon conviction, be punished," etc.

The instruction as given by the court was taken substantially from United States v. Illinois Cent. R. Co., 303 U.S. 239, 243, 58 S.Ct. 533, 82 L.Ed. 773. The requested instruction was taken verbatim from our opinion in United States v. Krosky, 6 Cir., 418 F.2d 65, 67. It should be noted that the *Illinois Central* case involved a civil penalty while the *Krosky* case was a criminal conviction against the appellant. We reversed the conviction because "willfulness" was not adequately explained. See also James v. United States, 366 U.S. 213, 221, 81 S.Ct. 1052, 6 L.Ed.2d 246; United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 98 L.Ed. 381; Screws v. United States, 325 U.S. 91, 101, 65 S.Ct. 1031, 89 L.Ed. 1495; United States v. E. Brooke Matlack, Inc., 149 F.Supp. 814, 819 (D.Md.1957). On mens rea see United States v. Freed, 401 U.S. 601, 607, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971).

■ Since Congress provided both a civil penalty and a criminal liability for violations of mine safety standards, it considered that such violations could have very serious results. Consequently there should be a very clear distinction between the type of violation that would incur only a civil penalty and one that would rise to criminal liability. Obviously, it was not intended that such a violation as would give rise to a civil penalty should be alternatively a criminal of-

fense. The statute uses the term "willfully violates." We are of the opinion that this would contemplate an affirmative act either of commission, or omission, not merely the careless omission of a duty.

The instruction on willfulness as given was not a sufficiently clear definition of the crime contemplated by the statute.

■■■■■ We conclude that the court erred in its instruction on willfulness. In this instruction the court used the word "knowingly" in the disjunctive. The jury could conclude from this that "knowingly" was the same as "willfully." It has been held that "willfully" means something more than "knowingly", St. Louis & S. F. R. R. v. United States, 169 F. 69 (C.A. 8 1909). Neither can we accept the instruction requested by the appellant, Consolidation. We do not consider the phrases "bad purpose" and "an evil motive" to be appropriate in this action. The Act, here involved, is a safety Act and it would be virtually impossible to establish violations if this rule were followed.

■■■■ In the context of the present case we would suggest that willfulness be defined substantially as follows:

> The failure to comply with the safety standard under the Federal Coal Mine Health and Safety Act of 1969 is willful if done knowingly and purposely by a coal mine operator who, having a free will or choice, either intentionally disobeys the standard or recklessly disregards its requirements.

We further conclude that there is a failure of evidence to show that appellant Donald M. Kidd knowingly authorized or ordered the violations charged in counts one and two. Thus the conviction against appellant Kidd on counts three and four must be vacated.

We reverse the judgment against Consolidation and remand to the District Court for retrial.

We do not reach other alleged errors claimed by the appellants.