Charlie YOUNG, Jr., Petitioner,

v.

Walter ZANT, Warden, Georgia Diagnostic & Classification Center, Respondent.

Civ. A. No. 79–100–Ath.

United States District Court, M. D. Georgia, Athens Division.

Dec. 5, 1980.

Laughlin McDonald, Atlanta, Ga., for petitioner.

Arthur Bolton, Atty. Gen., State of Ga., Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent.

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

WILBUR D. OWENS, Jr., Chief Judge.

Petitioner in the above styled action seeks federal habeas corpus relief under 28 U.S.C.A. § 2254. Petitioner is presently under a death sentence imposed by the Superior Court of Greene County, Georgia, following his conviction by jury in that court on February 19, 1976 of murder, armed robbery, and robbery by intimidation. Pursuant to 28 U.S.C.A. § 636(b)(1)(B), the petition was referred to United States Magistrate John D. Carey, who on August 7, 1980 entered proposed findings of fact and recommendations for disposition by the court. Pursuant to 28 U.S.C.A. § 636(b)(1)(C), petitioner has filed objections to the Magistrate's proposed findings and recommendations, and respondent has replied. This habeas corpus petition is now ready for determination by the court.

The enumerations of error asserted by petitioner in his § 2254 habeas corpus petition are listed in the Magistrate's proposed findings and recommendations for disposition. The Magistrate's proposed order holds against petitioner on each of his alleged grounds for relief, and recommends that the petition be denied. Petitioner's objections to the Magistrate's proposed findings reiterate in toto the enumerations of error underlying his habeas corpus petition.

Petitioner initially moves the court to grant an evidentiary hearing and oral argument on his habeas corpus petition or, alternatively, to recommit the petition to the Magistrate for an evidentiary hearing, on the grounds that the Magistrate's proposed findings and recommendations were made without a hearing or the receipt of additional evidence on several of petitioner's claims. Petitioner has submitted to the court in connection with his motion additional evidence consisting of affidavits, depositions, transcripts of various unrelated habeas corpus hearings, and other materials.

The Magistrate found, based on the entire record of the case, that the facts were

fully and fairly developed in the state courts and therefore no additional evidentiary hearing is necessary. This court agrees. Moreover, the court can consider the additional documentary evidence submitted by petitioner without the necessity of an additional hearing or oral argument.

One ground upon which petitioner seeks habeas corpus relief is that the jury selection procedures for grand and traverse juries in Greene County, Georgia unconstitutionally discriminated on the grounds of race, sex, and age, resulting in petitioner's being indicted and convicted by unconstitutionally composed juries. Petitioner's counsel raised this challenge by motion for hearing prior to trial but failed to produce any evidence whatsoever at the hearing to support the allegations of discrimination, and a motion for a continuance for that purpose was denied by the trial judge. No evidence of unconstitutional jury selection procedures was thereafter presented on direct appeal to the Georgia Supreme Court; on petition for certiorari to the United States Supreme Court; or to the state courts in state habeas proceedings. In fact, no such evidence was presented until after the Magistrate's report was submitted to this court.

The Magistrate found that petitioner's jury composition challenge is without merit since petitioner has not shown some actual way in which the composition of the grand or petit juries resulted in prejudice, citing *Lumpkin v. Ricketts*, 551 F.2d 680 (5th Cir. 1977). The court agrees with this conclusion of the Magistrate; however, the court deems it necessary to expand on the proposed findings of the Magistrate on this question.

■ If a state has a valid rule of criminal procedure which requires the defendant to object to the composition of the grand or petit jury before or during trial, failing which the objection is waived, then the federal courts honor that procedural rule by not allowing the convicted defendant to raise the jury claim in a federal habeas corpus proceeding. *Stewart v. Ricketts*, 451 F.Supp. 911 (M.D. Ga. 1978), *citing Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48

L.Ed.2d 149 (1976); *Lumpkin v. Ricketts, supra.* Before 1975, the Georgia courts had established a decisional rule that a defendant's failure to object to the grand or traverse juries before or during trial waived that objection as a basis for habeas relief. This court in *Stewart* relied on this rule. In 1975 Georgia codified this rule in Ga. Code Ann. § 50–127(1). That section provides in pertinent part:

> The right to object to the composition of the grand or traverse jury will be deemed waived under this section, unless the person challenging the sentence shows in the petition and satisfies the court that cause exists for his being allowed to pursue the objection after the conviction and sentence has otherwise become final.

This section became effective as law well before the date of petitioner's trial.

In *Stewart, Lumpkin,* and other federal and state cases in which this waiver rule has been applied, the petitioners had completely failed to object to the grand or traverse juries until habeas proceedings. The question before the court in the instant case is whether, although having objected to the grand and traverse juries before trial, petitioner's failure to present any evidence whatsoever to support his challenge to those juries constitutes a waiver under Georgia's waiver rule. This question appears to have been answered by the Georgia Supreme Court in the recent case of *Patterson v. Balkcom*, 245 Ga. 563, 266 S.E.2d 179 (1980).

■ The facts in *Patterson* are very similar to those in the present case. There the petitioner filed a challenge to the array of the grand and traverse juries before trial alleging systematic exclusion of blacks. At the hearing petitioner submitted evidence that an opportunity existed for discrimination from the source of the jury lists, but did not submit evidence concerning the racial composition of the juries. The trial court therefore overruled the challenge, and denied the petitioner's motion for a continuance. In state habeas proceedings petitioner submitted evidence of the racial composition of the juries. On review the Georgia

Supreme Court, applying Ga. Code Ann. § 50–127(1), held that petitioner had waived his challenge to the grand and traverse juries by not "perfecting" the challenge before the trial court by presenting evidence of the racial composition of the juries. The court went on to consider the evidence presented on state habeas to determine if petitioner had shown sufficient "cause" to be relieved of his waiver. It is clear from *Patterson* that petitioner in the instant case, having failed before or at trial to present evidence to support his challenge to the juries, would have been precluded by Georgia's waiver rule from raising the unconstitutional jury claims in his state habeas proceedings, absent a showing of prejudice.

Honoring Georgia's valid procedural rule as codified in Ga. Code Ann. § 50–127(1) and applied in *Patterson*, the court finds that petitioner waived his right to challenge the jury selection procedures of Greene County and the composition of the grand and traverse juries by failing to present evidence before or at trial to support his challenge. Petitioner may be relieved from the operation of this waiver, however, by showing cause for failing to make a timely challenge *and* actual prejudice. *Lumpkin v. Ricketts, supra.* Petitioner seeks to establish "cause" by alleging ineffective assistance of counsel. This argument must be rejected. *See Lumpkin v. Ricketts.* Id. at 682–83. Furthermore, the court finds, as did the Magistrate, that petitioner has failed to show any way in which his waiver or the composition of the actually impaneled grand or petit juries in his case resulted in actual prejudice. Actual prejudice must be some extraneous influence which moves a tribunal to decide a case on an improper basis, *Stewart v. Ricketts, supra, citing* McCormick, *Evidence* 439 (2d Ed. 1972). Petitioner's indictment and conviction both rest upon very strong and convincing evidence, a factor which belies any reliance by the grand or petit juries on any improper basis for their decisions. For these reasons, the court finds that petitioner has waived his right to challenge his grand and petit juries in this federal habeas corpus proceeding, and has failed to show cause for his now being allowed to pursue his objection to the composition of the grand and petit juries.

Petitioner asserts as a second basis for habeas corpus relief that he was denied effective assistance of counsel at all stages of his trial in violation of his rights under the Sixth and Fourteenth Amendments to the Constitution of the United States. Claims of ineffective assistance of counsel require the court to inquire into the actual performance rendered by counsel based on the totality of the circumstances. *Lovett v. Florida*, 627 F.2d 706, (5th Cir., 1980). Counsel's effectiveness is not to be judged by hindsight; the Constitution does not guarantee errorless counsel. *Rummel v. Estelle*, 590 F.2d 103, 104 (5th Cir. 1979) (per curiam). The Sixth Amendment only guarantees a defendant the right to counsel "reasonably likely to render and rendering reasonably effective assistance." *MacKenna v. Ellis*, 280 F.2d 592, 599 (5th Cir. 1960).

Having carefully considered the entire record in this case, the court agrees with the proposed findings of the Magistrate that petitioner's attorneys together afforded him reasonably effective assistance of counsel during the investigative stage before trial, during the pretrial proceedings and jury selection, and during the guilt-innocence phase of the trial. The specific instances of alleged counsel error which petitioner asserts as grounds for his claim of ineffective assistance of counsel during these stages of the trial either do not in fact constitute errors or do not rise to constitutional proportions. However, having carefully reviewed the transcripts of petitioner's trial and the state habeas proceedings, the court finds that petitioner did not receive reasonably effective assistance of counsel during the sentencing stage of his trial. The court's conclusion rests on several significant factors.

First, petitioner's principal attorney, seventy-two year old Reuben Garland, had no apparent understanding whatsoever of the bifurcated nature of the Georgia capital

trial and sentencing procedures, Ga. Code Ann. §§ 27–2503(b) and 27–2534.1. Trial Transcript, pp. 619, 670–671. Mr. Garland did not appreciate the nature and purpose of these procedures even after they were explained to him by his young assistant immediately prior to the sentencing phase of trial. Transcript of Habeas Corpus Hearing, p. 128.

 Ga. Code Ann. § 27–2503 provides that upon a return of a verdict of guilty the jury shall hear in a presentence hearing additional evidence in extenuation, mitigation, and aggravation of punishment and argument by the defendant or his counsel regarding the punishment to be imposed. The defendant is accorded substantial latitude as to the types of evidence that he may introduce, and it is desirable for the jury to have as much information as possible when it makes the sentencing decision. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859, 869 (1976). The sentencer should not be precluded from considering as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 773, 790 (1978).

Second, due to his ignorance of Georgia's bifurcated capital sentencing scheme, Mr. Garland failed to present any evidence whatsoever during the sentencing stage in mitigation of punishment. Although some mitigating evidence came in indirectly during the guilt-innocence phase of trial, specifically petitioner's lack of prior convictions and the fact that the Sheriff of Greene County had given petitioner a favorable job reference, Mr. Garland failed to reiterate and emphasize these significant mitigating factors or to present other mitigating evidence of petitioner's good employment record and good character, to which a number of witnesses would have testified. Mr. Garland also refused to allow petitioner to take the stand in his own defense to present other mitigating factors to which he might be able to testify. Instead of attempting to present some evidence in mitigation of punishment, Mr. Garland apparently argued at the sentencing hearing that petitioner was crazy, a defense which he had unsuccessfully sought to develop at trial. In fact, it was during the guilt-innocence phase that Mr. Garland argued against the death penalty, to wit:

> Under the evidence of this case, I only ask you for life. I don't ask you for anything but life. Trial Transcript, p. 619.

Thus, Mr. Garland in effect admitted during the guilt-innocence phase of trial that petitioner was guilty, but that he only deserved a life sentence!

Third, there is no justification for Mr. Garland's refusal to allow petitioner to testify during the sentencing phase of trial. Mr. Garland's not allowing petitioner to testify during the guilt-innocence phase of trial, since he was trying to raise an insanity defense, was a matter of trial strategy; however, the failure to allow petitioner to testify during sentencing cannot be justified on that basis. Petitioner should have been allowed to take the stand in his own behalf to present any possible mitigating circumstances surrounding the killing and plead with the jury not to sentence him to death. This is especially true where no evidence was presented in petitioner's behalf at the sentencing hearing. Mr. Garland's actions deprived petitioner of the only sentencing phase witness for the defense, the petitioner himself. Under the facts of this case, the court cannot say that refusing to allow petitioner to testify was nonprejudicial. Considering the statement made by petitioner after the jury had already recommended death, it is the court's opinion that petitioner's testimony, if he had been allowed to give it, could have had a substantial impact on the jury's decision regarding the death penalty.

The Fifth Circuit in at least one case has characterized the right to testify as "an inherently personal fundamental right that can be waived only by the defendant and not by his attorney." *Winters v. Cook*, 489 F.2d 174, 179 (5th Cir. 1973). Petitioner

testified during the state habeas hearing that he asked Mr. Garland several times during the sentencing stage of trial to allow him to testify in his own behalf, and the fact that petitioner was finally allowed to give a statement after sentencing supports that testimony. Of course, since he had already been sentenced to death, his statement came too late to have any possible effect on the jury's decision to recommend death.

 Finally, the court notes that this case satisfies the test laid down in *Fitzgerald v. Estelle*, 504 F.2d 1334 (5th Cir. 1974) (*en banc*), *cert. den.* 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975), and recently affirmed by the Fifth Circuit in *United States v. Guerra*, 628 F.2d 440, (5th Cir. 1980), that in order to establish a constitutional violation where the defendant in a state trial is represented by retained counsel, it must be shown that retained counsel was so deficient as to render the proceedings fundamentally unfair in violation of due process or that retained counsel's errors were so obvious that a state official connected with the proceedings, such as a judge, was or should have been aware of counsel's errors and could have taken corrective action. Pretermitting the question of whether Mr. Garland's ineffectiveness during the sentencing stage of trial rendered those proceedings fundamentally unfair, it is clear that the trial judge in this case was well aware of Mr. Garland's total ignorance of Georgia capital sentencing procedures, as well as various other deficiencies which he exhibited during trial. Although following closing arguments the trial judge instructed Mr. Garland's young assistant to explain Georgia's sentencing procedures to Mr. Garland, it is clear to this court and should have been clear to the trial judge that Mr. Garland's understanding and appreciation of the purposes behind the bifurcated nature of capital trials remained grossly deficient. Therefore, the *MacKenna, supra,* Sixth Amendment standard of effective assistance of counsel is the proper test by which to judge counsel's effectiveness in this case. *See, Fitzgerald v. Estelle, supra.*

 Mr. Garland's performance during the sentencing phase of petitioner's trial prevented the jury from giving due consideration to mitigating factors of petitioner's character and the circumstances of the offense, thus creating a substantial risk that petitioner received the death sentence in spite of factors that in the jury's opinion would call for a lesser penalty. *Lockett v. Ohio, supra,* 438 U.S. at 605, 98 S.Ct. at 2965, 57 L.Ed.2d at 990. The court concludes that Mr. Garland's ignorance of Georgia capital sentencing procedures, his failure to present any mitigating evidence during the sentencing phase of trial, and his refusal to allow petitioner to take the stand during the sentencing phase in his own behalf, viewed together, deprived petitioner during the sentencing phase of his trial for murder of his Sixth and Fourteenth Amendment rights to reasonably effective assistance of counsel. Petitioner is therefore entitled to be resentenced in proceedings in which he is afforded his constitutional right to effective assistance of counsel.

 Petitioner also asserts as a basis for habeas corpus relief that the evidence at trial did not support the jury's finding of statutory aggravating circumstances contained in Ga. Code Ann. § 27–2534.1(b)(2), that the murder was committed during the course of an armed robbery, and § 27–2534.-1(b)(4), that the murder was committed for the purpose of obtaining money. Having carefully considered all of the evidence presented at trial, the court finds that the evidence was not legally sufficient to support the jury's finding beyond a reasonable doubt that the murder was committed *in the course of* an armed robbery or *for the purpose of* obtaining money. The only relevant evidence presented at trial indicated that petitioner did not contemplate the taking of any money until after the shots had been fired and the blows had been struck, i. e., after the murder had been committed. *See,* Testimony of F.B.I. Agent Kane, Trial Transcript, pp. 372–373. Based on the evidence presented at trial, that petitioner pri-

or to the commission of the murder had any intent to rob the victim is only speculation. Certainly the evidence does not prove these aggravating factors beyond a reasonable doubt. Considering the evidence in this case and the plain language of Ga. Code Ann. § 27–2534.1(b)(2) and (4), the removal of the victim's wallet and the attempt to obtain money from the bank cannot be considered as aggravating factors of the already committed murder. Petitioner was therefore sentenced to death based on an improper finding of aggravating circumstances, and for this reason must be resentenced.

The court notes, however, that the circumstances of this murder may justify a finding of some other aggravating circumstance, such as aggravated battery. In resentencing petitioner, respondent may wish to consider Ga. Code Ann. Sections 27–2534.1(b)(2) and 27–2534.1(b)(7), being mindful, however, of the United States Supreme Court's decision in *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

Having been carefully considered, the findings and recommendations of the Magistrate with respect to petitioner's other claims in this habeas corpus petition are received with approval and adopted as the remainder of the court's opinion in this matter.

Accordingly, this petition for writ of habeas corpus is hereby granted only as it pertains to the imposition of the death sentence. The respondent is hereby ordered to commence resentencing procedures within 180 days failing which a writ of habeas corpus will be granted.

At such time as petitioner has been resentenced respondent shall file a certified copy of respondent's sentence with the Clerk of this court.