No. 83–5365.   YOUNG v. GEORGIA.   Sup. Ct. Ga.   Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

I dissent from the Court's denial of certiorari because it lets stand a ruling of the Georgia Supreme Court which violates the Double Jeopardy Clause of the Fifth Amendment as made applicable to the States through the Fourteenth Amendment, Benton v. Maryland, 395 U. S. 784, 794 (1969).   Because of the Georgia Supreme Court's blatant misreading of a decision by the United States Court of Appeals which granted habeas corpus relief to the petitioner, he will again be subjected to the State's attempt to impose a death sentence upon him even though a Federal District Court has made an undisturbed ruling that a death sentence recommended by a jury was invalid due to insufficiency of the evidence.

In February 1976, the petitioner, Charlie Young, Jr., was convicted of murder, armed robbery, and robbery by intimidation. At the sentencing phase of the trial, the jury condemned the petitioner to death after finding that the murder was accompanied by two statutorily defined aggravating circumstances: the murder was committed while the petitioner was engaged in the commission of another capital felony, Ga. Code Ann. § 17–10–30(b)(2)

(1982), and the petitioner committed the murder for the purpose of receiving money, § 17–10–30(b)(4).[1] The Supreme Court of Georgia affirmed the conviction and the sentence. *Young* v. *State*, 237 Ga. 852, 230 S. E. 2d 287 (1976). Subsequently, the Supreme Court of Georgia affirmed a lower state court's denial of Young's application for habeas corpus relief. *Young* v. *Ricketts*, 242 Ga. 559, 250 S. E. 2d 404 (1978), cert. denied *sub nom.* *Young* v. *Zant*, 442 U. S. 934 (1979).

Young then initiated habeas corpus proceedings in the United States District Court for the Middle District of Georgia. The District Court rejected Young's challenge to the validity of his conviction but set aside his death sentence. *Young* v. *Zant*, 506 F. Supp. 274 (1980). The District Court's order was based upon two holdings. First, the court held that Young had been denied effective assistance of counsel at the sentencing stage of his trial, in violation of the Sixth and Fourteenth Amendments to the Federal Constitution. *Id.*, at 278.[2] Second, the District Court held that

---

[1] In addition to the death sentence, the jury also sentenced Young to life imprisonment for armed robbery and to 20 years' imprisonment for robbery by intimidation.

[2] The District Court found that the petitioner's attorney had no understanding whatsoever of the Georgia capital trial and sentencing procedures. In a capital case in Georgia, there is first a trial to determine the guilt or innocence of the defendant. A separate sentencing hearing follows a determination of guilt. In effect, capital sentencing is a trial on the issue of punishment, embodying the hallmarks of the trial on guilt or innocence. See *infra*, at 1061–1062.

The petitioner's attorney failed to present *any* evidence during the sentencing hearing in mitigation of punishment, and refused to allow the petitioner to take the stand in his own behalf, thereby depriving the petitioner of the only sentencing phase witness for the defense—the petitioner himself. *Young* v. *Zant*, 506 F. Supp., at 278–280.

The District Court rejected the petitioner's claim that he had been deprived of effective assistance of counsel at the guilt-or-innocence phase of the trial, finding that the petitioner's attorney afforded him "reasonably effective assistance." *Id.*, at 278. This finding, however, is inconsistent with the court's observation that the petitioner's attorney "had no apparent understanding whatsoever of the bifurcated nature of the Georgia capital trial and sentencing procedures," *id.*, at 278–279, and that the attorney had used the utterly ridiculous strategy of admitting guilt but pleading for a life sentence at the guilt phase of the trial. *Id.*, at 279. Subsequently, the Court of Appeals reversed this finding, holding instead that the petitioner had also been denied effective assistance at the guilt phase of his trial. *Young* v. *Zant*, 677 F. 2d 792 (CA11 1982).

the evidence presented at trial "was not legally sufficient to support the jury's finding beyond a reasonable doubt that the murder was committed *in the course of* an armed robbery or *for the purpose of* obtaining money." *Id.*, at 280 (emphasis in original).

The United States Court of Appeals reversed the District Court's rejection of Young's challenge to his conviction. *Young* v. *Zant*, 677 F. 2d 792 (CA11 1982). The Court of Appeals held that Young had also been denied effective assistance of counsel at the guilt phase of his trial.[3] Finding the conviction invalid, the appellate court directed the District Court to grant the petitioner habeas corpus relief. The Court of Appeals noted the District Court's holding that Young had been denied effective assistance of counsel at the sentencing phase of the trial, *id.*, at 795, and its holding that insufficiency of the evidence nullified the jury's finding of aggravating circumstances. *Id.*, at 799, and n. 12. However, the Court of Appeals did not discuss either of these holdings.

In the wake of the federal appellate decision, the State reindicted Young for the same offenses. Moreover, the State again sought the death penalty based upon the same two aggravating circumstances previously charged, along with an additional allegation that the murder was "outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." Ga. Code Ann. § 17-10-30(b)(7) (1982).[4]

Young resisted the State's renewed attempt to impose the death penalty upon him, claiming that such an attempt would expose him to double jeopardy in violation of the Fifth and Fourteenth Amendments. The trial court, however, denied his plea of dou-

---

[3] According to the Court of Appeals, the attorney "did not accord Young even a modicum of professional assistance at any time" during the trial. *Id.*, at 794-795.

[4] The District Court practically invited the State to renew its attempt to seek the death-penalty against Young by suggesting that "the circumstances of this murder may justify a finding of some other aggravating circumstance, such as aggravated battery." 506 F. Supp., at 281. Subsequent to the District Court's suggestion but prior to the State's decision to seek the death penalty at Young's retrial, this Court held in *Bullington* v. *Missouri*, 451 U. S. 430 (1981), that the Double Jeopardy Clause was applicable to capital sentencing hearings like the one to which the petitioner was subjected at his first trial. See *infra*, at 1061-1062.

ble jeopardy.   Young then filed an interlocutory appeal to the Supreme Court of Georgia.   That court, with one justice dissenting, affirmed the trial court.   251 Ga. 153, 303 S. E. 2d 431 (1983).   The Supreme Court of Georgia ruled that the Double Jeopardy Clause is not implicated by this case because, in its view, the Federal Court of Appeals' decision reversing the District Court vacated not only that part of the District Court's holding which related to Young's conviction, but also that part of the holding which related to the insufficiency of the evidence underlying the jury finding of aggravating circumstances.   In the words of the Georgia Supreme Court:

> "Rather than reversing in part and affirming in part, the court of appeals chose to substitute its opinion for that of the district court. . . . [T]he effect of this reversal was to nullify the entire opinion of the district court and to place the parties in the position *quo ante*, subject, of course, to the holdings of the court of appeals." *Id.*, at 155, 303 S. E. 2d, at 433.

In other words, according to the Supreme Court of Georgia, the Court of Appeals' decision wiped away the District Court's holding that the finding of aggravating circumstances was invalid and thus removed that holding as an impediment to a renewed attempt to impose the death penalty.

This Court should review the decision of the Supreme Court of Georgia because it clearly misread the ruling of the Court of Appeals and thereby improperly avoided the petitioner's compelling double jeopardy claim.   Purporting to interpret the Court of Appeals' ruling, the Supreme Court of Georgia concluded that the effect of the reversal by the Court of Appeals of *part* of the District Court's holding regarding federal habeas corpus relief was to nullify the *entire* opinion of the District Court.   In reality, however, the Court of Appeals' decision related only to the question whether petitioner received effective assistance of counsel at the guilt-or-innocence phase of his trial.[5]   Reversing the District

---

[5] The Court of Appeals did not review the District Court's finding of insufficiency of the evidence at the sentencing phase of the trial because, having ruled that Young's conviction was illegal, there was no need to review the propriety of the sentence.   The Court of Appeals thus left that aspect of the District Court's ruling undisturbed.

Court, the Court of Appeals held that Young had been denied effective assistance at the guilt-or-innocence phase of the trial. The Court of Appeals said nothing, however, to disturb the District Court's holding that the jury's finding of aggravating circumstances was not reasonably supported by the evidence presented at trial. Indeed, the opinion notes the District Court's conclusion with apparent approval because it cites counsel's obliviousness to the clear insufficiency of the evidence as yet another example of counsel's incompetence. 677 F. 2d, at 799, and n. 12.

The Georgia Supreme Court has committed a glaring error by ignoring the Court of Appeals' express limitation of its ruling to the question whether petitioner had been denied effective assistance of counsel at the guilt-or-innocence phase of his trial. The opinion clearly states that "[t]he district court's denial of the writ of habeas corpus *with respect to the guilt phase of Charlie Young's trial* is therefore REVERSED" (emphasis added). *Id.*, at 800. In light of the Court of Appeals' explicit statement that it reversed only with respect to the guilt phase of petitioner's trial, it is inexplicable how the Supreme Court of Georgia could conclude that the effect of the Court of Appeals' holding was "to nullify the entire opinion of the district court." 251 Ga., at 155, 303 S. E. 2d, at 433.

Given appropriate recognition, the District Court's undisturbed ruling that the jury's finding of aggravating circumstances was not rationally supported by the evidence solidly supports the petitioner's claim that the State should be prevented by the Double Jeopardy Clause from seeking to reimpose a death sentence upon him. This conclusion is dictated by this Court's decisions in *Bullington* v. *Missouri*, 451 U. S. 430 (1981), and *Burks* v. *United States*, 437 U. S. 1 (1978).

In *Bullington*, this Court held that the Double Jeopardy Clause was applicable to the sentencing proceeding in a capital case in Missouri because, under the relevant state law, the sentencing proceeding "was itself a trial on the issue of punishment." 451 U. S., at 438. Describing the trial-like features of the sentencing procedure, the Court observed:

> "The jury [in the sentencing phase of the trial] was not given unbounded discretion to select an appropriate punishment from a wide range authorized by statute. Rather, a separate hearing was required and was held, and the jury was

presented both a choice between two alternatives and standards to guide the making of that choice. Nor did the prosecution simply recommend what it felt to be an appropriate punishment. It undertook the burden of establishing certain facts beyond a reasonable doubt in its quest to obtain the harsher of the two alternative verdicts." *Ibid.*

These features also characterize the sentencing proceeding under which the petitioner was initially sentenced to death. In Georgia, as in Missouri, an accused may be sentenced to death only after a separate sentencing hearing, governed by the beyond-a-reasonable-doubt standard. Indeed, the Georgia Supreme Court has itself noted that the Missouri death penalty statute "is essentially identical to the Georgia statute." *Godfrey* v. *State,* 248 Ga. 616, 617, 284 S. E. 2d 422, 425 (1981), cert. denied, 456 U. S. 919 (1982). Young, then, like the accused in *Bullington, supra,* was sentenced in a proceeding that was itself a trial on the issue of punishment and thus a proceeding subject to the Double Jeopardy Clause.

In *Burks, supra,* the Court held that an accused may not be subjected to a second trial when conviction in the initial trial is reversed based on insufficiency of evidence. Because the sentencing hearing under Georgia's capital punishment scheme is the equivalent of a trial, at least for the purposes of determining the applicability of the Double Jeopardy Clause, the District Court's holding that the jury's finding of aggravating circumstances is not rationally supported by the evidence should preclude the State from again seeking the death penalty on the basis of those aggravating circumstances.

Moreover, the State should be precluded from seeking the death penalty in this case even though it has alleged a third aggravating circumstance in addition to the two it alleged in the first trial. Having been given one fair chance to prove beyond a reasonable doubt the existence of aggravating circumstances sufficient to justify the execution of Charles Young, Jr., the State should not be allowed a second chance to have him condemned to death. We stated in *Burks, supra,* that "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." 437 U. S., at 11. Tacking on an additional allegation of an aggravating circumstance is merely a transparent

attempt by the State to create a second opportunity to supply evidence which it failed to muster in the first sentencing hearing. Furthermore, in *Bullington, supra*, the Court specifically noted that its decision to prevent a State from seeking the death penalty in a retrial where, in the previous trial, a jury had declined to impose a death sentence did "not at all depend upon the State's announced intention to rely only upon the same aggravating circumstances it sought to prove at [the] first trial or upon its statement that it would introduce no new evidence in support of its contention that [the accused] deserves the death penalty." 451 U. S., at 446.

This Court has indicated in a wide variety of contexts that in matters involving capital punishment, a heightened degree of judicial scrutiny is warranted, given the special nature of the interest at stake: the very life of the accused. Here, however, the Court is willing to allow the State of Georgia to seek anew to impose the death penalty upon Charlie Young, Jr., even though it is almost certainly the case that absent the Georgia Supreme Court's egregious misreading of the United States Court of Appeals' decision in *Young* v. *Zant, supra*, the State would be barred from again seeking the death penalty. I therefore dissent from the Court's denial of a writ of certiorari.