468 So.2d 1133 (1985)
STATE of Louisiana
v.
Elliot Joseph DAVID.
No. 82-KA-0150.
Supreme Court of Louisiana.
April 1, 1985.
Rehearing Denied May 23, 1985.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Morel, *1134 Jr., Dist. Atty., Don Almerico, Harry Morgan, Abbott Reeves, and Greg Champagne, Asst. Dist. Attys., for plaintiff-appellee.
Randell O. Lewis, Luling, Manina Dubroca, St. Rose, for defendant-appellant.
CALOGERO, Justice.[*]
By an opinion rendered on November 26, 1984, defendant's death sentence, which had been imposed for the second time by a trial jury, was set aside upon our finding unconstitutional La.Code Crim.Pro.Ann. art. 905.4(c), which prescribes as an aggravating circumstance supporting the death penalty that "the offender ... has a significant prior history of criminal activity." In that opinion we were uncertain about, and did not resolve, a matter which, understandably, had not been briefed on appeal. That unresolved question was whether the case could be remanded for another penalty hearing or whether such would be prohibited by the double jeopardy clause of the United States and Louisiana Constitutions. We determined that that question should be considered after briefing and oral argument at a later date. The case has been briefed and argued anew and we now render this opinion.
Elliot Joseph David was convicted of murder.[1] In the second stage of that bifurcated trial, that is, in the penalty hearing, three aggravating circumstances were presented to the jury and relied upon by the state. These were (1) the offender was engaged in the perpetration of armed robbery; (2) the offender had a significant prior history of criminal activity; (3) the offense was committed in a particularly heinous manner. The jury, furnished a copy of the statutory aggravating and mitigating circumstances in accordance with the dictates of La.Code Crim.Pro. art. 905.3, found all three of the foregoing aggravating circumstances to be present, as well as a fourth, that the offender knowingly created a risk of death or great bodily harm to more than one person. See La. Code Crim.Pro. art. 905.4(a), (c), (g) and (d). On appeal this Court affirmed the conviction, but reversed the death sentence and remanded the case for resentencing because the trial judge had instructed the jury that they must recommend the death penalty if they were to conclude that the prosecution had established an aggravating circumstance. State v. David, 425 So.2d 1242, 1249 (La.1983).
Following a change of venue, a second jury unanimously recommended the death penalty. In that second sentencing hearing the state presented and relied on partially different aggravating circumstances, namely, (1) that the offender was engaged in the perpetration of an armed robbery, (2) that the offender had a significant prior history of criminal activity, and (3) that the victim was an eye witness to a crime alleged to have been committed by defendant. Notwithstanding that there was placed of record an agreement between the state and defense that only the foregoing three aggravating circumstances would be presented to the jury, the prosecutor argued that the offender knowingly created a risk of death or great bodily harm to more than one person and that the offense was committed in a specially heinous manner. The judge ultimately charged the jury relative to all five aggravating circumstances and furnished the jury a list of the nine distinct aggravating circumstances listed in Article 905.4. The jury recommended the death penalty upon finding a single aggravating circumstance, namely, that the defendant had a significant prior history of criminal activity.
*1135 It was on appeal from this latter death penalty verdict that we again upset the penalty. We concluded that La.Code Crim. Pro. art. 905.4(c) was unconstitutionally vague because it contained no ascertainable standard for determining what conduct constitutes a "significant prior history of criminal activity."
Consequently, we now address whether a third capital sentencing hearing may be held without violating the constitutional prohibition against double jeopardy.
The Fifth Amendment to the United States Constitution provides that no person shall "be subject to the same offence to be twice put in jeopardy of life or limb." La. Const. art. I, § 15 similarly provides that "[n]o person shall be twice placed in jeopardy for the same offense except on his application for new trial, when a mistrial is declared or when a motion in arrest of judgment is sustained." According to Blackstone's Commentaries, the concept of double jeopardy had its roots in ancient common law pleas before finding expression in the legal tradition of colonial America. Inherent in the guarantee against double jeopardy are three constitutional protections:
1) against a second prosecution for the same offense after acquittal; 2) against a second prosecution for the same offense after conviction; 3) against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969).
The United States Supreme Court in an often quoted passage, elaborated in Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223-24, 2 L.Ed.2d 199 (1957) said:
The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
Of course, the prohibition against double jeopardy does not preclude the government's retrying a defendant whose conviction is set aside on the basis of an error in the proceedings leading to the conviction. Forman v. United States, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960); Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed.2d 335 (1950); Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919); United States v. Ball, 163 U.S. 662, 671-72, 16 S.Ct. 1192, 1195-96, 41 L.Ed. 300 (1896). As expressed by the United States Supreme Court in United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964):
Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceeding leading to conviction.
The double jeopardy provision indeed forbids the retrial of a defendant who has been acquitted. United States v. Di-Francesco, 449 U.S. 117, 127-30, 101 S.Ct. 426, 432-34, 66 L.Ed.2d 328 (1980); Burks v. United States, 437 U.S. 1, 16, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978); United States v. Martin Linen Supply Co., 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977); Fong Foo v. United States, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962); Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).
The United States Supreme Court, however, has not applied that principle to sentencing. Imposition of a particular *1136 sentence usually is not regarded as an "acquittal" of any more severe sentence that could have been imposed. Thus the United States Supreme Court has concluded that the double jeopardy clause imposes no absolute prohibition against the imposition of a harsher sentence at retrial after a defendant has succeeded in having his original conviction set aside.[2]See North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). See also United States v. DiFrancesco, 449 U.S. 117, 133 and 137-38, 101 S.Ct. 426, 435 and 437-38, 66 L.Ed.2d 328 (1980); Chaffin v. Stynchcombe, 412 U.S. 17, 23-24, 93 S.Ct. 1977, 1981-1982, 36 L.Ed.2d 714 (1973); Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919).
In Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), the Court unanimously held that the double jeopardy clause did not bar the imposition of the death penalty when the defendant, originally sentenced to life imprisonment, was again convicted at his new trial. Nonetheless, the United States Supreme Court has more recently found that the reasoning in Stroud is not applicable in the currently prevalent bifurcated system in capital prosecutions, that is, where the sentencing decision is made in a second stage of a trial wherein the prosecution has the burden of establishing certain facts beyond a reasonable doubt in its quest to obtain the harsher of two alternative verdicts. Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). In Bullington, the United States Supreme Court noted that "the pre-sentence hearing resembled, and indeed in all relevant respects, was like the immediately preceding trial on the issue of guilt or innocence. It was itself a trial on the issue of punishment so precisely defined by the Missouri statutes."
Under the Missouri system, a defendant convicted of capital murder may receive only one of two sentences in a separate sentencing hearingeither death or life imprisonment without eligibility for probation or parole for fifty years. The jury is provided with standards in making that choice, and the prosecution, in urging the harsher of the two alternative verdicts, is required to prove its case beyond a reasonable doubt. The Court concluded that the sentencing phase of defendant's first trial was like the trial on the initial question of guilt or innocence, and that the defendant had thereby been acquitted as relates to the death sentence when the jury recommended life.
Louisiana's capital sentencing provisions are much like those of Missouri, as described in Bullington. After a verdict of guilty in a capital case, a sentencing hearing is required before a sentence of death can be imposed. La.Code Crim.Pro. art. 905. The sentencing hearing focuses on the circumstances of the offense and the character of the offender, and is conducted according to the rules of evidence. "The procedure shall be same as that provided for trial in the Code of Criminal Procedure." La.Code Crim.Pro. art. 905.2. A sentence of death is imposed only after "the jury finds beyond a reasonable doubt that at least one statutory aggravating circumstance exists." La.Code Crim.Pro. art. 905.3.
There is, however, an obvious difference between this case and Bullington. The jury in Bullington returned a sentence of life imprisonment, in effect acquitting Bullington as regards the death penalty. In contrast, in this case, the jury recommended the death penalty for this defendant, just as the jury did in his first trial in which the death penalty had also been overturned by this Court.
The defense in this case maintains that the second jury, in finding only one of five aggravating circumstances argued by the prosecution, resolved the others in defendant's favor. According to the defense, *1137 since every aggravating circumstance applicable to the facts of this murder had been rejected or found to be unconstitutional, any further sentencing hearing should be barred.
La.Code Crim.Pro. art. 905.3 requires that the jury find the existence of "at least one" of the statutory aggravating circumstances. It does not require a finding with respect to each of the aggravating circumstances. If it were otherwise under Louisiana's procedure, the jury's finding would indicate the jury's consideration and rejection of those circumstances not brought in. In contrast, the return of a life sentence, as in Bullington, when the only other alternative was the death penalty, reflects a rejection by the jury of the death penalty. So too, when a jury returns a responsive verdict on a lesser and included offense, it can be said that the jury rejected the greater charged offense. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). In such cases it has been found that the double jeopardy prohibition bars prosecution for the greater offense with a potentially greater penalty.
It is conceivable that in this case the jury found the state's evidence insufficient on one or more of the aggravating circumstances urged by the prosecutor. However, the jury was not asked to determine whether each of the aggravating circumstances was or was not proven. They were not required to make a finding with regard to each. There was simply no rejection by the jury of the other argued and/or presented aggravating circumstances. That conclusion is made even more evident by this second jury's not finding the aggravating circumstances prescribed at La.Code Crim.Pro. art. 905.4(a), that the offender was engaged in the perpetration of armed robbery. That aggravating circumstance was presented to the jury but not specifically found by them. Yet the defendant's conviction for first degree murder was based on his specific intent to kill while engaged in the perpetration of armed robbery. La.Rev.Stat.Ann. § 14:30(1). It certainly cannot be concluded that when the jury found the existence of a significant prior history of criminal activity it made a considered judgment as well, that defendant had not been engaged in the perpetration of armed robbery. It is more likely that they responded to the legal charge that they need find only one statutory aggravating circumstance before being authorized to impose the death penalty, and that upon finding one they moved on to the consideration of mitigating circumstances and sentence recommendation. Furthermore, they might indeed also have opted to use their finding on significant prior history of criminal activity rather than perpetration of armed robbery, inasmuch as they knew that the defendant had already been found guilty of a premeditated murder committed during the perpetration of an armed robbery in the guilt phase of the trial, a matter which was related to them by the prosecutor at the outset of the second sentencing hearing.
Our determination that the jury's finding a single aggravating circumstance does not amount to an acquittal of the other aggravating circumstances argued or presented to the jury is in accord with the majority of decisions of other state jurisdictions.
In 1981, the Supreme Court of South Carolina in State v. Gilbert, 277 S.C. 53, 283 S.E.2d 179 (1981), considered whether the double jeopardy principles espoused in Bullington were applicable to a second sentencing trial (after a jury's recommendation of death) where only one of two aggravating circumstances submitted for the jury's consideration had been found by the first jury. Citing Gerberding v. Swenson, 435 F.2d 368, 371 (8th Cir.1970), cert. denied, 403 U.S. 906, 91 S.Ct. 2211, 29 L.Ed.2d 682 (1971), that court concluded that the failure of a jury to find for or against a defendant on a particular aggravating circumstance, when the finding of another valid aggravating circumstance was sufficient to call for the application of the death penalty, did not warrant the later application of a double jeopardy bar. The court pointed out that two sentencing juries *1138 had decided that death was the appropriate penalty for the defendant. Like the defendant in this case, and unlike the defendant in Bullington, the defendant in Gilbert had not been acquitted of the death penalty.
The Georgia Supreme Court in Zant v. Redd, 249 Ga. 211, 290 S.E.2d 36 (1982), concluded that Bullington's double jeopardy proscription after acquittal of the death penalty does not apply where a finding of death is made, supported by only one of several aggravating circumstances urged. The court noted that, as relates to the aggravating circumstances not found, there was no jury rejection since the Georgia death penalty statute, like Louisiana's, requires only a finding of one aggravating circumstance in order to allow imposition of the death penalty. The lack of a finding with respect to one or more aggravating circumstances urged is not a rejection thereof as is the case where the jury has chosen life over death. The Georgia Supreme Court found aggravating circumstances to be procedural prerequisites, or standards to guide a jury's decision.
The Wyoming Supreme Court in Hopkinson v. State, 664 P.2d 43, 70 (Wyo.1983), likewise asserted that the rationale of Bullington was simply inapplicable to its case because the first jury had returned the death sentence. Citing Knapp v. Cardwell, 667 F.2d 1253, 1263-65 (9th Cir.1982), they concluded that there is "no such thing as an `acquittal' from an aggravating circumstance in the penalty phase."
Only one case which we have uncovered stands apart from the jurisprudence cited above. The North Carolina Supreme Court in State v. Silhan, 275 S.E.2d 450 (N.C. 1981), has decided that the jury's failure to find the existence of a given aggravating circumstance after it had considered it would be tantamount to defendant's having been acquitted of that circumstance.[3] The reasons given by the North Carolina Supreme Court in support of that opinion are not convincing.

Decree
For the foregoing reasons we conclude that Louisiana's statutory system does not trigger the application of double jeopardy principles to the jury's consideration of aggravating circumstances where the trial jury has recommended the death penalty upon finding only one of two or more aggravating circumstances urged. We therefore remand this case to the district court for a new penalty hearing. The state is at liberty to present, argue, and rely upon all such aggravating circumstances as may be supported by the evidence.
REMANDED TO THE DISTRICT COURT FOR NEW SENTENCING HEARING.
DENNIS, J., concurs with reasons.
DIXON, C.J., dissents with reasons.
WATSON, J., dissents and assigns reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
Twice before different juries imposed the death sentence. Each was reversed. Now, for a third time, this court sends the case back to get another jury to try to obtain the death penalty according to law. Defendant is exposed to the death penalty for the third time for the same offenseat least once too often.
The least this court should do is to limit the evidence and argument about "aggravating circumstances" at the next trial to that introduced and argued at the previous trials.
WATSON, Justice, concurring in part and dissenting in part.
The majority opinion is factually erroneous. It says: "The judge ultimately charged the jury relative to all five aggravating circumstances and furnished the *1139 jury a list of the nine distinct aggravating circumstances listed in Article 905.4." A reading of the record shows that this statement is incorrect.
At David's second penalty hearing, the jury was given a sheet listing three aggravating circumstances relied on by the state:
"the offender was engaged in the perpetration or attempted perpetration of armed robbery.
"the offender has a significant prior history of criminal activity.
"the victim was an eye witness to a crime alleged to have been committed by the defendant."[1] (Tr., Vol. 4, p. 6)
The trial court also orally defined heinous, atrocious and cruel.
The jury was not charged by the judge as to all five aggravating circumstances relied on by the state. The jury was not furnished a list of the nine aggravating circumstances listed in Article 905.4.
The majority's legal analysis is also faulty. When a jury has returned a verdict of death and there has been no trial error, aggravating circumstances relied on by the state which have been rejected by implication cannot be considered at a new penalty hearing. The state has failed to prove their existence, and the jury has acquitted the defendant of the aggravating circumstances which it did not find. Giving the state another chance to obtain the death penalty on aggravating circumstances which it has apparently failed to prove would clearly put David's life twice in jeopardy on the same charges. State v. Silhan, 302 N.C. 223, 275 N.E.2d 450 (1981). Protection against double jeopardy is a fundamental constitutional principle and not a mere technicality. The majority errs seriously in speculating that the jury found one aggravating circumstance and then went on to other matters. The vital consideration is that David was exposed to the finding of the other circumstances and they were not returned.
Of course, this would not prevent a jury, at a new sentencing hearing, from weighing any aggravated circumstances which had not previously been relied on by the state.
In Godfrey v. State, 248 Ga. 616, 284 S.E.2d 422 (1981), cert. den. 456 U.S. 919, 102 S.Ct. 1778, 72 L.Ed.2d 180, reh. den. 456 U.S. 1001, 102 S.Ct. 2286, 73 L.Ed.2d 1296 (1982) the state relied on only one aggravating circumstance at the initial trial, and the jury found a different statutory aggravating circumstance at the second trial. Defendant was not impliedly acquitted by the first jury of the second trial's aggravating circumstance because the first jury did not consider that circumstance. See Green v. Zant, 738 F.2d 1529 (11 Cir., 1984), cert. den. ___ U.S. ___, 105 S.Ct. 607, 83 L.Ed.2d 716, where an aggravating circumstance found by the jury in the second trial was not relied on by the state in the first trial.
While a jury is not obligated to find more than one aggravating circumstance to support a death verdict, its conclusions as to the existence or non-existence of other aggravating circumstances must be given absolute finality as an implied acquittal. Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981).
Zant v. Redd, 249 Ga. 211, 290 S.E.2d 36 (1982), cert. den. 463 U.S. 1213, 103 S.Ct. 3552, 77 L.Ed.2d 1398 (1983) classifies aggravating circumstances as mere procedural guidelines which prevent a jury from imposing a death sentence in an arbitrary or capricious manner. However, Zant v. Redd differs from the present case. There, the sentence was reversed for trial error, as was David's first sentence. "[T]he state and defense start[ed] anew," as in David's second penalty hearing. Zant v. Redd, 290 S.E.2d at 39. Hopkinson v. State, supra, also differs from this case. There, in a situation similar to that in David's first trial, the jury was "inadequately instructed" at the first trial. 664 P.2d at 69. There was trial error. See United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); Green v. *1140 Zant, 738 F.2d 1529 (11 Cir., 1984), cert. den. ___ U.S. ___, 105 S.Ct. 607, 83 L.Ed.2d 716; State v. Gilbert, 277 S.C. 53, 283 S.E.2d 179 (1981), cert. den. 456 U.S. 1004, 102 S.Ct. 2294, 73 L.Ed.2d 1299 (1982); and Davis v. State, 240 Ga. 763, 243 S.E.2d 12 (1978), 242 Ga. 901, 252 S.E.2d 443 (1979), 246 Ga. 432, 271 S.E.2d 828 (1980), cert. den. 459 U.S. 891, 103 S.Ct. 189, 74 L.Ed.2d 153, reh. den. 459 U.S. 1010, 103 S.Ct. 336, 74 L.Ed.2d 401 (1982). Compare Young v. Zant, 506 F.Supp. 274 (1980), 677 F.2d 792 (11 Cir., 1982), 585 F.Supp. 295 (1984) where the question is not clear. However, David's second reversal did not result from trial error. The issue now is the effect of a reversal based on the unconstitutionality of a statute.
At David's second trial, the state and defendant started anew with a clean slate. However, the trial court did not furnish the jury a list of all the statutory aggravating circumstances. The second jury thus considered only three aggravating circumstances, two found by the first jury and Lone additional circumstance. David was impliedly acquitted of two aggravating circumstances, and the death penalty based on the third was vacated.[2] The state should, however, be free to have a new jury consider any aggravating circumstances to which David was not exposed at the second penalty hearing.
I concur in the order of a new penalty hearing. I dissent from allowing the state to rely on the two aggravating circumstances of which David was acquitted at his second penalty hearing.

ON REHEARING
CALOGERO, Justice, concurring in rehearing denial.
The application for rehearing has properly been denied, in my view. Nonetheless, the assertions in the dissenting opinion, upon which the application for rehearing relies in part, require a response.
The dissenting justice takes issue with the part of the majority opinion wherein we stated that the trial judge charged the jury with five aggravating circumstances and furnished the list of all nine recited in Article 905.4. With respect to the former, that is, that the jury was charged with five aggravating circumstances, we stated that the State relied on three aggravating circumstances ((a) the offender was engaged in the perpetration of armed robbery; (b) the offender had a significant prior history of criminal activity; (c) the victim was an eye witness to a crime alleged to have been committed by the defendant), and the state argued two others as well ((d) the offense was committed in a particularly heinous manner; (e) the offender knowingly created a risk of death or great bodily harm to more than one person), and that the judge charged the jury with regard to all five. In fact, the judge specifically charged the jury on four of the five (those noted at (a) through (d) above), but told them that they could (or perhaps should) consider the entire list of aggravating circumstances. She stated at page 261 of the trial transcript:
The fact that I do not explain some of the circumstances should not cause you to infer that I do or do not believe they exist.
With respect to the latter, that is, our statement on original hearing that the judge furnished the jury a list of all nine aggravating circumstances as recited in La. Code Crim.Pro. art. 905.4, I believe that the trial transcript supports that assertion. In stating that the entire list was probably given, we relied on the following: that (1) the trial judge, at the outset of this capital sentencing hearing, read the entire list of aggravating circumstances from article 905.4; (2) article 905.3 requires that "[t]he *1141 jury shall be furnished with a copy of the statutory aggravating and mitigating circumstances;"[1] and (3) the trial judge stated
You will be furnished a list of the statutory aggravating and mitigating circumstances which you may take with you when you go to deliberate.
Furthermore, she admonished the jury that her not explaining some of the aggravating and/or mitigating circumstances [presumably those listed in Article 905.4 but not included in her formal charge] by no means implied her belief that these circumstances did not exist.
On the other hand, we do acknowledge that the record contains a document which lists only the three aggravating circumstances "relied on by the state in this case." From the entire record, however, it is evident neither that this document was actually submitted to the jury nor that, if so, it was the only list provided.
In all events, none of this detracts from our holding, that is, that Louisiana's statutory system does not trigger the application of double jeopardy principles to the jury's consideration of aggravating circumstances (in a re-trial) where the trial jury has earlier recommended the death penalty upon finding only one of two or more aggravating circumstances urged.
WATSON, Justice, dissenting from denial of rehearing.
With respect, I dissent from the denial of a rehearing in this case because there is no question that defendant will now be exposed for a third time to loss of his life.
As to the list of aggravating circumstances, I agree that resolution of the problem is not necessary to a decision of the case. However, the court should strive for accuracy in all cases and especially those involving capital punishment. The conclusion by the author of the majority opinion that "the entire list was probably given" is not satisfactory. There is no entire list in the record. The only list of aggravating circumstances in the record is the list of three at Volume IV, page 6. At Volume IV, page 5, there is the recommendation of the jury on which the foreman copied the exact edited language that appears on this list. A list of eight mitigating circumstances appears at Volume IV, page 7. The conclusion cannot be avoided that these are the lists of aggravating circumstances and mitigating circumstances given the jury by the court.[1]
NOTES
[*] Judge Denis A. Barry, Court of Appeal, Fourth Circuit, participated in this decision for Lemmon, J., recused.
[1] The murder occurred on the evening of March 31, 1981, after Elliot David and his wife had been drinking in a lounge for about an hour. When only one other customer remained, in addition to the bartender and barmaid, David produced a pistol and demanded valuables from the others. He then asked the customer whether he recognized him and, after receiving a muffled response, placed the pistol to his head and pulled the trigger. The weapon misfired but, on pulling the trigger again, he fired a fatal shot into the customer's head from a distance of about two inches.
[2] Of course, there would be a violation of the Fourteenth Amendment should a trial court impose a heavier sentence on a reconvicted defendant in order to punish him for having successfully appealed his original conviction. North Carolina v. Pearce, 395 U.S. 711, 723-24, 89 S.Ct. 2072, 2079-80, 23 L.Ed.2d 656 (1969).
[3] State v. Silhan was cited by two United States Supreme Court Justices (Justices Marshall and Brennan) in dissenting to the denial of certiorari in Davis v. Georgia, 103 S.Ct. 189, 191 (1982).
[1] LSA-C.Cr.P. art. 905.4(h).
[2] A majority of this court found "significant prior history of criminal activity" to be unconstitutional as being too vague. I dissented believing a jury could decide the meaning of that phrase. Now, however, the majority is not willing to face the logical result of that constitutional decision (application of a constitutional principle to aggravating circumstances) and, in effect, hold that the principle of double jeopardy has no application to aggravating circumstances.
[1] The law rather pointedly requires that the jury be furnished copies of both statutory aggravating and mitigating circumstances. La.Code Crim.Pro.Ann. art. 905.3. Nonetheless, assertions in two recent decisions of this Court deserve mention. In State v. Flowers, 441 So.2d 707, 717 (La.1983), in response to argument that it was wrong for the trial judge to instruct the jury on admittedly extraneous aggravating circumstances, we found non-meritorious the claim that the judge should instruct the jury only as to the aggravating circumstances supported by the evidence at trial. We added gratuitously that instructing the jury only as to the aggravating circumstances supported by the evidence at trial is permissible and desirable but not required constitutionally or statutorily.

And, in State v. Summit, 454 So.2d 1100, 1107 n. 13 (La.1984), the author of the majority opinion recited in a footnote that it is a preferable practice to narrow the jury's list to aggravating circumstances "actually urged by the prosecutor and arguably supported by the evidence."
I find it unnecessary to the disposition of this case in its present posture to decide whether Article 905.3 and its requirement that the jury be furnished a copy of the aggravating and mitigating circumstances should be followed in all instances, or whether the "preferable" practice of narrowing the list urged in State v. Flowers should be followed.
[1] The aggravating circumstances found by the jury reads as follows: "The offender has a significant prior history of criminal activity." This is precisely the edited language which appears on the list of three aggravating circumstances filed in the record at Volume IV, page 6. The statutory language reads as follows: "(c) the offender was previously convicted of an unrelated murder, aggravated rape, or aggravated kidnapping or has a significant prior history of criminal activity; ..." LSA-C.Cr.P. art. 905.4 in pertinent part.