Charlie YOUNG, Jr., Petitioner,

v.

Walter ZANT, et al., Respondents.

Civ. A. No. 79–100–ATH.

United States District Court,
M.D. Georgia,
Athens Division.

April 20, 1984.

Wade M. Crumbley, McDonough, Ga., for petitioner.

Susan V. Boleyn, Atlanta, Ga., for respondents.

## ORDER

OWENS, Chief Judge.

Currently before the court is petitioner Charlie Young's motion made pursuant to Rule 70 of the Federal Rules of Civil Procedure to enforce the judgment in this case entered by this court on December 5, 1980, in which this court ruled that petitioner was denied effective assistance of counsel at the sentencing phase of his trial. This court also noted that petitioner's death sentence was invalid because the evidence was not sufficient to support the jury's finding of aggravating circumstances beyond a reasonable doubt.[1] As a result, petitioner was ordered to be resentenced, failing which a writ of habeas corpus would be granted. *Young v. Zant*, 506 F.Supp. 274 (M.D.Ga.1980).[2]

The parties then filed cross-appeals from this court's decision, and the United States Court of Appeals for the Eleventh Circuit ruled that petitioner had also been denied effective assistance of counsel at the guilt-innocence phase of his bifurcated trial. This court's ruling as to the sentencing phase remains undisturbed. *Young v. Zant*, 677 F.2d 792 (11th Cir.1982).

On September 29, 1982, judgment was entered making the Court of Appeals' decision the judgment and order of this court, and the petitioner was ordered retried within six months thereafter. Subsequently, by order of February 1, 1983, the time limit imposed for retrial was extended until 90 days after a final decision in all interlocutory appeals pursued by petitioner. This extension followed petitioner's reindictment and notification that the same aggravating circumstances relied on by the State at his first trial were to be relied on by the State at his retrial in addition to one new aggravating circumstance.[3]

1. The aggravating circumstances which the State relied on previously were that the murder for which petitioner was convicted was committed during the course of an armed robbery, O.C.G.A. § 17–10–30(b)(2), and for the purpose of obtaining money, O.C.G.A. § 17–10–30(b)(4).

2. A detailed history of petitioner's appeals may be found in the State's response to petitioner's Motion to Enforce Judgment and will not be repeated here.

3. Petitioner was notified that at his retrial, the State will rely on the additional aggravating circumstance that the murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim, O.C.G.A. § 17–10–30(b)(7).

Following that notification, petitioner filed a plea of former jeopardy in the courts of this State, contending that he could not be resentenced to death in violation of the Double Jeopardy Clause of the Fifth Amendment. Both the trial court and the Supreme Court of Georgia rejected his plea. *Young v. State*, 251 Ga. 153, 303 S.E.2d 431 (1983). The Supreme Court of the United States denied certiorari. *Young v. Georgia*, — U.S. —, 104 S.Ct. 740, 79 L.Ed.2d 198 (1984).

Pursuant to this court's order of February 1, 1983, petitioner's retrial was set for April 17, 1984. Petitioner is now before this court requesting that the district attorney be required to abide by this court's prior judgment in again seeking the death penalty against him at retrial. More specifically, petitioner urges that the district attorney should not be allowed to again seek the death penalty against him on the basis of the statutory aggravating circumstances found by this court to be unsupported by the evidence because such reliance is precluded by the Double Jeopardy Clause.[4] The State's position, which is consistent with the ruling by the Supreme Court of Georgia, is that the judgment from which petitioner seeks relief can only refer to the judgment of the Court of Appeals which was made the judgment and order of this court on August 2, 1982; thus, no possible double jeopardy violation will result by the district attorney's again seeking the death penalty against petitioner even if based in part on the same aggravating circumstances previously noted by this court to be unsupported by sufficient evidence. This position is premised on the allegation that the Court of Appeals substituted its decision for the decision of this court and that as a result, because no mention was made of this court's findings regarding the sufficiency of the evidence to support the aggravating circumstances found by the jury, this court's findings in that regard were nullified.

Even though the parties have different opinions regarding the correct interpretation of the Court of Appeals' decision in this case, it would not be appropriate to wait until after petitioner has been retried and possibly resentenced to determine whether a double jeopardy violation will result if the district attorney is allowed to again seek the death penalty against petitioner based at least in part on the same aggravating circumstances relied on previously. *Cf. Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1982) ("... [P]retrial orders rejecting claims of former jeopardy, such as that presently before us, constitute 'final decisions' and thus satisfy the jurisdictional prerequisites of § 1291." (footnote omitted). 52 L.Ed.2d at 662); *Patterson v. State*, 248 Ga. 875, 287 S.E.2d 7 (1982) (Denial of a timely filed plea of double jeopardy is appealable without resort to interlocutory appeal procedures.). As stated in *Abney*,

Finally, the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. To be sure, the Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment, as the Government suggests. However, this Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense.

\*    \*    \*    \*    \*    \*

Obviously, [this aspect] of the guarantee's protections would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be

4. In a footnote to his brief in support of his Motion to Enforce Judgment, petitioner urges that decisions by the United States Supreme Court, discussed later in this opinion, would

seem to preclude the State from adding an aggravating circumstance as well, which in effect would preclude the State from again seeking the death penalty altogether.

taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit. Consequently, if a criminal defendant is to avoid exposure to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs.

431 U.S. at 660, 662, 97 S.Ct. at 2040, 2041, 52 L.Ed.2d at 660, 661, and 662 (footnotes omitted). Thus, a discussion of the merits of petitioner's double jeopardy claim is appropriate even though petitioner has not yet been retried.

■ At the outset, it should be noted that although this court's previous discussion regarding the sufficiency of the evidence to support the jury's findings regarding aggravating circumstances has been described by subsequent courts as a ruling, a close examination of that decision will reveal that the sufficiency of the evidence to support the death penalty was not discussed in detail as was the ineffective assistance of counsel issue and thus served merely as further justification for finding petitioner's death sentence invalid. Because emphasis was not placed by this court on its discussion regarding the sufficiency of the evidence, it is not surprising that the Court of Appeals did not discuss that issue. Consistent with the emphasis placed by this court, the Court of Appeals noted this court's findings regarding the sufficiency of the evidence in exemplifying petitioner's ineffective assistance of counsel. The discussion regarding the sufficiency of the evidence to support the aggravating circumstances found previously was simply an additional observation as to why petitioner's death sentence was invalid and was not necessarily intended to be a binding ruling in that regard. As a result, it cannot be said with certainty that a double jeopardy violation will result if the district attorney is again allowed to seek the death penalty against petitioner.

Otherwise as to the merits of petitioner's double jeopardy claim, a collective reading of *Bullington v. State of Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); and *Godfrey v. State*, 248 Ga. 616, 284 S.E.2d 422 (1981) supports petitioner's claim that his constitutional right against double jeopardy will be violated if the district attorney is again allowed to seek the death penalty against him. The sentencing phase of a trial is analogous to the guilt-innocence phase. *Bullington, supra.* If there is insufficient evidence to support a jury's verdict at the guilt-innocence phase of a trial, double jeopardy applies. As explained in *Burks;*

... In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error just as society maintains a valid concern for insuring that the guilty are punished. *See* Note, Double Jeopardy: A New Trial After Appellate Reversal for Insufficient Evidence, 31 U Chi L Rev 365, 370 (1964).

The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble.[10] Moreover, such an appellate reversal means that the government's case was so lacking that it should not have even been submitted to the jury. Since we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter now erroneous its deci-

sion—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.

---

[10] In holding the evidence insufficient to sustain guilt, an appellate court determines that the prosecution has failed to prove guilt beyond a reasonable doubt. *See American Tobacco Co. v. United States*, 328 U.S. 781, 787 n. 4, 90 L.Ed. 1575, 66 S.Ct. 1125 [1128 n. 4] (1946).

437 U.S. at 15 and 16, 98 S.Ct. at 2149 and 2150, 57 L.Ed.2d at 12 and 13.

The same rationale applies to the sentencing phase of a bifurcated trial. As stated in *Bullington*,

> ... The 'embarrassment, expense and ordeal' and the 'anxiety and insecurity' faced by a defendant at the penalty phase of a Missouri capital murder trial surely are at least equivalent to that faced by any defendant at the guilt phase of a criminal trial. The 'unacceptably high risk that the [prosecution], with its superior resources, would wear down a defendant,' id., [*United States v. Difrancesco*, 449 U.S. 117] at 130, 66 L.Ed.2d 328, 101 S.Ct. 426 [at 433], thereby leading to an erroneously imposed death sentence, would exist if the State were to have a further opportunity to convince a jury to impose the ultimate punishment.

451 U.S. at 445, 101 S.Ct. at 1861, 68 L.Ed.2d at 283.[5]

■ Based on the above, the Double Jeopardy Clause seemingly applies to a case such as this one; however, the facts are somewhat distinguishable here in that the implication to be drawn from the court's previous decision is not that there was insufficient evidence to support the death sentence but rather that the evidence was not sufficient to support the death penalty based on the particular aggravating circumstances relied on by the district attorney. In that sense, and for the reason that the district attorney is not seeking a greater or lesser sentence than that previously imposed, petitioner's constitutional right against double jeopardy will not be violated if the district attorney again seeks the death penalty based on the same evidence previously presented but in support of the proper aggravating circumstances.[6]

■ In any event, it would be futile to make a considered analysis here as to the effect of this court's prior judgment on petitioner's double jeopardy claim unless it was the Court of Appeals' intention to affirm—*in its entirety*—this court's previous decision regarding the sentencing phase of petitioner's trial. Although this court does not question its authority to interpret its own decision, it would not be appropriate to do so if indeed it was the Court of Appeals'

**5.** In *Godfrey v. State*, 248 Ga. 616, 284 S.E.2d 422 (1981), the Georgia Supreme Court noted that, "*Bullington* arose under a Missouri death penalty statute which is essentially identical to the Georgia statute." *Id.* at 617, 284 S.E.2d at 425.

**6.** If this court were to find, as has been suggested, that the evidence was sufficient to support the death penalty but that the aggravating circumstances presented to the jury were not properly relied on by the district attorney, this court's previous discussion regarding aggravating circumstances would be based on legal grounds and would be distinguishable from *Bullington* on that basis. *Cf. Godfrey*, 284 Ga. at 618, 284 S.E.2d at 425 ("The reversal in *Godfrey v. Georgia, supra* [446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398], was based on the premise that the Supreme Court of Georgia, in affirming a death sentence based on no more than a finding that the offense was outrageously or wantonly vile, horrible and inhuman, had allowed a standardless and unchanneled imposition of the death penalty 'in the uncontrolled discretion of a basically uninstructed jury.' *Godfrey v. Georgia, supra*, 446 U.S. at 429, 100 S.Ct. at 1765.") Also as was noted in *Godfrey* and as is the case here, "... *Bullington* is distinguishable from the case at bar in that in *Bullington* there was a life sentence imposed at the first sentencing procedure whereas in the instant case a death penalty was imposed. Therefore, the danger of repeated attempts by the state to wear a defendant down and obtain the desired result is not present. *Green v. State, supra* [246 Ga. 598, 272 S.E.2d 475]; *Spraggins v. State, supra* [243 Ga. 73, 252 S.E.2d 620]; *Davis v. State, supra* [242 Ga. 901, 252 S.E.2d 443]; *Redd v. State, supra* [242 Ga. 876, 252 S.E.2d 383]." *Id.*

intention to substitute its opinion for the opinion of this court, in which case the slate would be wiped clean and the district attorney could proceed with petitioner's retrial without further interference. On the other hand, if the Court of Appeals considered this court's previous discussion as to the sufficiency of the evidence to support the aggravating circumstances found by the jury as binding and affirmed this court in that regard, a more detailed consideration would have to be made of petitioner's claims made here and the effect of this court's prior judgment.

Based on this preliminary consideration and findings discussed herein, petitioner's Motion to Enforce Judgment is hereby DENIED. An appeal from this denial is likely to follow in light of the parties' previously stated desire that this matter be addressed by the Eleventh Circuit Court of Appeals. In that regard, while this court's order denying petitioner's motion is without a doubt an appealable order, this court finds—out of an abundance of caution because of the unusual nature of the motion and appeal for which there is no clear precedent—that the question which follows is a controlling question of law as to which there is a substantial ground for difference of opinion within the meaning of 28 U.S.C.A. § 1292(b) and that an immediate appeal from this order and answer to the question posed below will materially advance the ultimate termination of this litigation.

The controlling question is as follows:

Whether the United States Court of Appeals for the Eleventh Circuit through its decision in *Young v. Zant,* 677 F.2d 792 (11th Cir.1982) considered this court's finding that the statutory aggravating circumstances contained in O.C.G.A. §§ 17–10–30(b)(2) and (b)(4) were not authorized by the evidence as binding and reversed this court in that regard or substituted its opinion for the opinion of this court such that petitioner may be retried in a proceeding in which the State again seeks the death penalty based on the same two aggravating circumstances and/or on other additional statutory aggravating circumstances not utilized during petitioner's initial trial without violating his constitutional right against double jeopardy thereby.

Finally, this court will not consider petitioner's Motion to Enforce Judgment further until the Court of Appeals has had an opportunity to respond to the question set forth above. This court's order of February 1, 1983, remains in effect; thus, the time limit imposed for petitioner's retrial is extended until 90 days after a final decision is made and all appeals pursued regarding the claims discussed herein.