**Charlie YOUNG, Jr.,
Petitioner-Appellant,**

v.

**Ralph KEMP, Warden, Georgia Diagnostic & Classification Center, Joseph H. Briley, District Attorney of Ocmulgee Circuit, Respondents-Appellees.**

No. 84–8408.

United States Court of Appeals,
Eleventh Circuit.

May 3, 1985.

Rehearing and Rehearing En Banc
Denied June 7, 1985.

Wade M. Crumbley, McDonough, Ga., for petitioner-appellant.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondents-appellees.

Before KRAVITCH and ANDERSON, Circuit Judges, and ATKINS *, District Judge.

R. LANIER ANDERSON, III, Circuit Judge:

Appellant Young's habeas corpus death penalty petition appears for a second time in this court. Young maintains that the district court's initial judgment, *Young v. Zant,* 506 F.Supp. 274 (M.D.Ga.1980)— holding that there was insufficient evidence to support the death sentence, *i.e.,* insufficient evidence to prove the alleged statutory aggravating factors beyond a reasonable doubt as required by the Georgia death penalty statute, Ga.Code Ann. § 17–10–30(c)—bars the state under the Double Jeopardy Clause from seeking the death penalty in its current retrial of Young.

## I. PROCEDURAL HISTORY

Young was tried and convicted of murder, armed robbery, and robbery by intimidation in the Superior Court of Green County, Georgia, in February of 1976. The evidence presented at trial showed that after a heated argument with his banker, Flynt, over a loan, Young shot and killed the banker. After the shooting, Young took a wallet from his victim's back pants pocket and left the scene of the crime.[1] Pursuant to Georgia's bifurcated death sentencing procedures, *see* Ga.Code Ann. § 17–10–30, *et seq.,* Young was sentenced to death after the jury found that Young was guilty beyond a reasonable doubt of two statutory aggravating factors.[2] The two aggravating factors found were:

(1) "[T]he offense of murder ... was committed while the offender was engaged in the commission of another capital felony," *i.e.,* armed robbery; and

(2) "[T]he offender committed the offense of murder ... for the purpose of receiving money"

Ga.Code Ann. § 17–10–30(b)(2), (4).

After exhausting all available state remedies, Young filed a habeas corpus petition in the United States District Court for the Middle District of Georgia pursuant to 28 U.S.C.A. § 2254. Young alleged several constitutional infirmities, only two of which are relevant to this appeal. First, he maintained that his trial counsel provided ineffective assistance of counsel at both the guilt/innocence phase of his trial and at the sentencing phase. Second, Young maintained that the evidence adduced at trial was insufficient to support either aggravating circumstance beyond a reasonable doubt. Thus, Young argued, his death sentence could not stand because Georgia law requires such a sentence to be supported by at least one legitimate aggravating factor. Ga.Code Ann. § 17–10–31. The district court ruled that Young's trial counsel had been reasonably effective at the

---

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. A summary of the evidence adduced at trial is presented in this court's initial habeas opinion. *Young v. Zant,* 677 F.2d 792 (11th Cir.1982). It is not necessary to review all the facts; those facts necessary to the adjudication of the issues presented will be supplied in the course of this opinion.

2. Under Georgia's death penalty statute, with certain exceptions not relevant here, the jury can only impose the death sentence if it finds the defendant guilty of a capital crime and, then, in a separate proceeding, finds the defendant guilty beyond a reasonable doubt of at least one of the statutory aggravating factors. Ga. Code Ann. § 17–10–31. Even if the jury finds the defendant guilty of a statutory aggravating factor, it nevertheless has complete discretion to forego imposing the death sentence, and to sentence the defendant to life in prison. *Id.; Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

guilt/innocence phase of the trial. However, the court held that Young's counsel had been constitutionally ineffective at the sentencing phase of the trial. In addition, the district court agreed with Young that the evidence was insufficient to support either of the statutory aggravating factors. *See Young v. Zant*, 506 F.Supp. at 278–81. The court found that there was no evidence that Young had formed the intent to rob his victim prior to the killing and, thus, the murder was not perpetrated while Young was *engaged* in another capital felony (*i.e.*, armed robbery), nor for the *purpose* of receiving money. Thus, the district court granted the writ of habeas corpus with respect to Young's death sentence.

The state appealed the district court's ruling with respect to Young's death sentence, and Young cross-appealed from the denial of his other claims. On appeal, this court made only one explicit ruling: that Young's counsel provided ineffective assistance during the guilt/innocence phase of the trial, as well as during the sentencing phase. *Young v. Zant*, 677 F.2d 792 (11th Cir.1982). Thus, the court held that "[t]he district court's denial of the writ of habeas corpus with respect to the guilt phase of Charlie Young's trial is ... REVERSED." *Id.* at 800. With respect to the district court's holding that there was insufficient evidence to support the statutory aggravating factors, this court made no explicit determination.[3] However, the court acknowledged the district court's ruling in this regard, *id.* at 794, 799, and discussed the "deficiency in the evidence" in the course of highlighting Young's ineffectiveness claim. *Id.* at 799.

After this court's decision in *Young v. Zant, supra*, Young was reindicted by the Green County grand jury. The grand jury again charged Young with murder, armed robbery, and robbery by intimidation. Subsequently, on December 8, 1982, Young's

trial counsel was served with a new "notice of statutory aggravating circumstances," indicating that the state would again seek the death penalty. The notice stated that the two aggravating circumstances alleged in Young's first trial would again serve as bases for the imposition of the death penalty. In addition, the notice indicated that the state would seek to submit to the jury a third aggravating circumstance: that the murder was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." *See* Ga.Code Ann. § 17–10–30(b)(7).

Upon receiving this new notice of statutory aggravating circumstances, Young pleaded double jeopardy, arguing that the federal district court's insufficiency finding amounted to former jeopardy under *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). This plea was overruled by the trial court and appealed to the Georgia Supreme Court. The Georgia Supreme Court agreed with the trial court, finding no double jeopardy bar to the imposition of a new death sentence based on the same aggravating factors alleged in the first trial. *Young v. State*,[4] 251 Ga. 153, 303 S.E.2d 431 (1983) (one Justice dissented), *cert. denied sub nom. Young v. Georgia*, —— U.S. ——, 104 S.Ct. 740, 79 L.Ed.2d 198 (1984) (two Justices dissented from denial of certiorari). Subsequently, the case was returned to the Green County Superior Court for trial. On March 14, 1984, Young filed in federal district court a "Motion to Enforce Judgment" in his original federal habeas corpus proceeding. Young argued that the state's attempt to impose the death penalty violated the Double Jeopardy Clause in light of the district court's prior determination of evidentiary insufficiency with regard to the statutory aggravating factors alleged in Young's first trial. The

---

**3.** The court of appeals' failure to explicitly rule on the insufficiency claim in *Young v. Zant*, 677 F.2d 792 (11th Cir.1982), is of critical importance in assessing Young's double jeopardy claim in the instant appeal. *See infra* Part II.A.

**4.** A fuller discussion of the Georgia Supreme Court decision and its implications with regard to Young's double jeopardy claim appears in Part II.B, *infra*.

district court declined to enforce its prior habeas judgment by applying the Double Jeopardy Clause to bar imposition of the death penalty in Young's retrial, suggesting instead that it was appropriate for this court to determine the validity of the double jeopardy claim, because the decision would turn in part on the meaning of the previous decision of this court. *Young v. Zant,* 585 F.Supp. 295 (M.D.Ga.1984) ("*Young II*").

■ We conclude that the previous judgment of this court left intact the district court's finding of insufficient evidence to support the death sentence. That being the case, the double jeopardy principles announced in *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), prevent the state from seeking the death penalty in Young's retrial. We therefore reverse.

## II.  DISCUSSION

In reviewing Young's double jeopardy claim, we must answer two principal questions: (1) what was the effect of this court's decision in *Young v. Zant,* 677 F.2d 792, on the validity of the district court's finding that there was insufficient evidence to buttress the aggravating factors alleged to support Young's death sentence? *See*

*Young v. Zant,* 506 F.Supp. 274, 280–81; and (2) what are the double jeopardy implications of the district court's holding?

### A.  *This Court's Initial Decision*

■ As indicated above, this court made no explicit ruling with regard to the district court's holding that there was insufficient evidence to support the aggravating factors alleged by the state. It is important to ask whether this court implicitly affirmed or reversed the district court's sufficiency finding.[5]

It is clear that the court of appeals was cognizant of the district court's finding regarding sufficiency and that the state sought reversal of this finding. 677 F.2d at 794. Although the court did not entertain the sufficiency issue for adjudication per se, it did comment on the issue with respect to Young's ineffective assistance of counsel claim:

> Turning to the armed robbery count, we note the district court, in assessing the sufficiency of the State's evidence of aggravating circumstances on the malice murder charge, concluded that the State did not produce sufficient evidence to permit the jury to find beyond a reasonable doubt that Young had formed the intent to rob Flynt prior to the fatal assault. *Young v. Zant,* 506 F.Supp. at 280–81. This deficiency in the evidence

5. In the first instance, it is important to ask whether a finding of constitutional insufficiency is reviewable at all, *i.e.,* whether double jeopardy attaches as soon as a court makes its determination of insufficiency. This court has assumed otherwise—that it *can* reverse a federal district court's habeas determination of insufficient evidence—and it has done so when it found the lower court to be in error. *Martin v. Alabama,* 730 F.2d 721, 723 (11th Cir.1984). At first blush, this might seem to be at odds with the general proposition that a judgment of acquittal amounts to former jeopardy. However, where a reviewing court is assessing the sufficiency of the evidence in a case in which the defendant was originally convicted in the trial court (*e.g.,* all federal habeas proceedings), a reversal of the reviewing court's insufficiency finding would not result in a *retrial* of the defendant. While a jury verdict of acquittal is absolutely final, *see Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1

(1978), a judgment of acquittal after a jury conviction or an appellate reversal on the basis of insufficient evidence does not always amount to former jeopardy. There is a narrow exception in cases where an original jury verdict of guilty is set aside and a judgment of acquittal is entered on sufficiency of the evidence grounds either by the trial judge or by an intermediate appellate court. In such a case, it has been held that double jeopardy does not preclude a subsequent reversal on appeal of such a judgment of acquittal, because the appellate reversal would not result in a retrial, but rather in a reinstatement of the jury's guilty finding. *See United States v. Wilson,* 420 U.S. 332, 345, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975) ("a defendant has no legitimate claim to benefit from an error of law when that error could be corrected without subjecting him to a second trial before a second trier of fact"); *accord, Arizona v. Rumsey,* —— U.S. ——, ——, 104 S.Ct. 2305, 2311, 81 L.Ed.2d 164, 172 (1984).

should have been sufficiently clear to Garland [Young's trial attorney] to suggest a strong argument that Young did not rob Flynt by use of an offensive weapon and thus could not be guilty of armed robbery under Ga.Code Ann. § 26–1902.

677 F.2d at 799 [footnote omitted]; *see also id.* at 794 n. 3. Young urges this court to consider the above quoted language as an implicit affirmance of the district court's sufficiency finding. While we acknowledge that the appellate court's description of the "deficiency in the evidence" amounts to a favorable comment upon the district court's sufficiency finding, we do not believe that the above quoted paragraph was intended as an affirmance. Nowhere in the opinion does the court take up the sufficiency issue as a separate matter. There is no question that the sufficiency issue was dealt with for the explicit purpose of highlighting the court's ineffective assistance of counsel analysis. *Cf. Young v. Zant,* 677 F.2d at 799 n. 12 ("Although the petitioner did not raise a claim regarding the sufficiency of the evidence to support his armed robbery conviction, we consider the insufficiency of that evidence in assessing the adequacy of Garland's assistance to Young under the Sixth Amendment"). Finally, the court ended its opinion by indicating that the relief being granted related only to the guilt/innocence phase of Young's trial. 677 F.2d at 800.

The state argues, on the other hand, that the effect of this court's opinion was to reverse the district court's sufficiency finding. This argument also has no merit. First, as Young's counsel pointed out at oral argument, if we read the court of appeals opinion as reversing the district court entirely, we would, as a matter of logic, be compelled to believe that this court meant to reverse the district court's ruling with respect to the numerous constitutional claims on which the district court denied relief. Such an interpretation of the court of appeals' opinion would be absurd since at least two of Young's claims were broad-based attacks on the constitutionality of the Georgia death penalty statute. Sec-

ond, that this court intended to reverse the district court's sufficiency finding after discussing it favorably in conjunction with its ineffective assistance of counsel analysis is contrary to a common sense reading of the opinion. Finally, it is important to note the precise way in which the court of appeals granted relief. The court said:

> The district court's denial of the writ of habeas corpus *with respect to the guilt phase* of Charlie Young's trial is therefore REVERSED. On receipt of the mandate, the district court shall grant the writ.

677 F.2d at 800 (emphasis added). The emphasized language makes clear that the reversal did not relate to the sentencing phase of Young's trial, the phase which is pertinent to the sufficiency claim.

The state also argues that the court of appeals chose to "nullify" the district court's opinion, relying on the interpretation given our prior opinion by the Georgia Supreme Court. *See Young v. State,* 251 Ga. 153, 303 S.E.2d 431, 432–33 (1983). In denying Young's double jeopardy claim, the Georgia Supreme Court put great stock in the fact that this court did not by its words explicitly affirm the district court. The Georgia court stated:

> Rather than reversing in part and affirming in part, the court of appeals chose to substitute its opinion for that of the district court.
>
> We perceive that the effect of this reversal was to nullify the entire opinion of the district court and to place the parties in the position *quo ante,* subject, of course, to the holdings of the court of appeals .... It follows that in reviewing the denial of Young's double jeopardy pleas, we look only to the opinion of the court of appeals.

*Young v. State,* 303 S.E.2d at 432.

We respectfully conclude that the idea that this court sought to "nullify" the district court opinion in all respects draws no support from the plain language of this court's opinion. Our conclusion is bolstered by the same reasons given above,

indicating that this court could not have intended to reverse every aspect of the district court's judgment. If this court had chosen to substitute its opinion for the district court's, the more appropriate action would have been to "vacate," not "reverse." For the reasons indicated, we are confident that this court's prior opinion did not intend to "nullify" the district court's sufficiency finding.

Given the above analysis, it is apparent that the court of appeals did not appreciate the double jeopardy implications of the district court's sufficiency ruling[6] and, thus, did not find it necessary to reach the issue. The court apparently labored under the misunderstanding that by reversing the district court on a guilt/innocence phase issue, all sentencing phase issues were subsumed thereby, and were thus irrelevant. That being the case, we are left with an *undisturbed district court holding* with respect to its sentencing phase sufficiency finding.[7] The effect of leaving this portion of the district court holding undisturbed on appeal is the same as if there had been no appeal at all. *See* 1B J. Moore, *Moore's Federal Practice* ¶ 0.404[9]. This holding became the law of the case.

We now must consider whether the state is barred under the Double Jeopardy Clause from seeking a death sentence in Young's retrial.

B. *Does Double Jeopardy Attach to the District Court's Sufficiency Finding?*

Before turning to a consideration of the double jeopardy effect of the district court's insufficiency finding, we address two subsidiary arguments made by the state which contend that the district court's ruling was not, in reality, a holding that the evidence was legally insufficient.

First, the state argues, relying on the Georgia Supreme Court opinion, that the district court's finding was not actually one of insufficient evidence because the court misconstrued the applicable Georgia law. The Georgia Supreme Court apparently interpreted the district court opinion as holding that the fact of the victim's death prior to the taking would extricate the defendant's conduct from the definition of armed robbery. *Young v. State*, 303 S.E.2d at 433–34. The Georgia court then properly criticized such a holding as being inconsistent with *Moore v. State*, 233 Ga. 861, 213 S.E.2d 829, 832 (1975). *Moore* held that a defendant may be convicted of armed robbery even if he incapacitates or kills the victim prior to the actual robbery, where the "[a]ppellants' admitted purpose in going to [the victim's] home was to rob him." 213 S.E.2d at 832.

We respectfully conclude that the Georgia Supreme Court misinterpreted the district court opinion, and that the district court opinion is not in fact in derogation of *Moore v. State*. The district court did not hold that there can be no armed robbery merely because the victim dies prior to the taking (a holding which would be in derogation of *Moore v. State*); rather, the district court held that the murder must be "in the course of" the armed robbery, and that the murder here was not "in the course of" the armed robbery because the

**6.** None of the participants in this case seem to have recognized the double jeopardy issue at this point in the litigation. In fact, the district court had earlier suggested that the state might again seek the death penalty on retrial, although on different aggravating circumstances. *Young v. Zant*, 506 F.Supp. 274, 281 (M.D.Ga.1980). However, the district court cannot be faulted for this since its opinion was rendered prior to *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the case which first applied double jeopardy principles to the sentencing phase of a bifurcated death penalty system. *See infra* Part II.B.

**7.** We realize that a definitive ruling by the court of appeals on the sufficiency question would have produced a more satisfactory result. Nevertheless, the state was not left without procedural mechanisms to force a resolution of the issue. The state could have petitioned for rehearing or rehearing en banc to this court or for a writ of certiorari to the United States Supreme Court. The fact that the state did not use these procedural mechanisms indicates that it, too, did not appreciate the double jeopardy consequences of the district court's ruling at the time it was rendered.

intent to rob was an afterthought and was not formulated until after the murder was entirely completed (a holding which is not inconsistent with *Moore v. State*). The plain words of the district court opinion require this conclusion:

> The only relevant evidence presented at trial indicated that petitioner *did not contemplate* the taking of any money until after the shots had been fired and the blows had been struck, *i.e.,* after the murder had been committed .... Based on the evidence presented at trial, that petitioner prior to the commission of the murder had any *intent* to rob the victim is only speculation ....

*Young v. Zant,* 506 F.Supp. 274, 280–81 (emphasis added). Thus, the district court finding turns *not* on the notion that armed robbery cannot legally occur subsequent to the incapacitation or death of the victim; rather, the decision turns on the district court's conclusion that there was no evidence that the murder was committed *in the course* of the armed robbery or *for the purpose* of obtaining money, because the intent to rob and the purpose to obtain money were afterthoughts and, thus, non-existent until after the murder was entirely completed. The dissenting opinion in the Georgia Supreme Court puts it precisely:

> The district court found that the jury could only speculate that Young intended to rob the victim before committing the murder, ... and thus that the evidence as to the first aggravating circumstance—murder committed *in the course* of an armed robbery—was insufficient.

*Young v. State,* 303 S.E.2d at 436 (dissenting opinion). We conclude that there was no erroneous construction of the Georgia statute.[8]

■■■ Second, the state argues, relying again on the opinion of the Georgia Supreme Court, that the federal district court did not make a finding of constitutional insufficiency. The Georgia Supreme Court concluded that "[a]bsent a reliance upon *Jackson v. Virginia* ... in support of [the federal district court's] determination, we conclude that the court's observations related to the *weight* of the evidence rather than the constitutional sufficiency." *Young v. State,* 303 S.E.2d at 434. The Georgia court's statement in this regard finds no support in the federal district court's habeas ruling. The district court stated, in relevant part:

> Petitioner also asserts as a basis for habeas corpus relief that the evidence at trial did not support the jury's finding of statutory aggravating circumstances ... (b)(2), that the murder was committed during the course of an armed robbery, and ... (b)(4) that the murder was committed for the purpose of obtaining money. Having carefully considered all of the evidence presented at trial, the court finds that the evidence was not legally sufficient to support the jury's finding beyond a reasonable doubt that the murder was committed *in the course of* an armed robbery or *for the purpose of* obtaining money. The only relevant evidence presented at trial indicated that petitioner did not contemplate the taking of any money until after the shots had

---

8. In any event, it is far from clear that an error of law, even if it did exist, would work in the state's favor. Generally, the fact that an acquittal may result from an erroneous evidentiary ruling or an error of law does not alter its double jeopardy implications. "[T]here is no exception permitting retrial once the defendant has been acquitted, no matter how 'egregiously erroneous' ... the legal rulings leading to that judgment might be." *Sanabria v. United States,* 437 U.S. 54, 75, 98 S.Ct. 2170, 2184, 57 L.Ed.2d 43 (1978), *quoting Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962); *see also Arizona v. Rumsey,* —— U.S. ——, —— – ——, 104 S.Ct. 2305, 2310–11, 81 L.Ed.2d 164, 171–72 (1984) (applying this principle in death sentencing context). While it is true that any such error of law could have been corrected on appeal from the district court's judgment because it would not have resulted in the retrial of the defendant, *see supra* note 5, it would be another question entirely whether the district court's insufficiency judgment, which is now the law of the case, can be collaterally attacked where double jeopardy concerns are implicated. Because we find no error of law, we need not address that thorny issue. In any event, the state has made no such collateral attack argument seeking to avoid the law of the case doctrine.

been fired and the blows had been struck, *i.e.*, after the murder had been committed .... Based on the evidence presented at trial, that petitioner prior to the commission of the murder had any intent to rob the victim is only speculation. Certainly the evidence does not prove these aggravating factors beyond a reasonable doubt.

*Young v. Zant,* 506 F.Supp. 274, 280–81 (emphasis in original). The above quoted language clearly constitutes a *Jackson v. Virginia* insufficiency finding, invoking the "reasonable doubt" standard announced in *Jackson* and referring to legal sufficiency. In *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979), the Supreme Court held that a federal habeas court may grant the writ if upon the evidence presented in a state criminal proceeding "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." The Georgia Supreme Court's reliance on the fact that the district court did not cite *Jackson v. Virginia* is not persuasive. A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the "weight" of the evidence, and there is no hint in the district court's opinion that the district court misunderstood this fundamental principle. We conclude that the district court's judgment cannot reasonably be construed to be anything other than a *Jackson v. Virginia* holding on the sufficiency of the evidence.

Having concluded that the district court's holding was, in reality, based on the legal insufficiency of the evidence, we now turn to the question of whether the state is barred under the Double Jeopardy Clause from seeking a death sentence in Young's retrial. In assessing Young's double jeopardy claim, we must consider two recent decisions of the United States Supreme Court.

■ In *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), defendant Burks was tried in a federal district court. Before the case was submitted to the jury, Burks moved for a judgment of acquittal which was denied by the trial judge. The jury then found Burks guilty as charged. On appeal, the court of appeals held that the evidence was insufficient to support the verdict, but remanded to the district court to decide whether it was proper to retry Burks (*i.e.,* whether the government could produce additional evidence which would cure the insufficiency). The Supreme Court was thus "presented with the question of whether a defendant may be tried a second time when a reviewing court has determined that in a prior trial the evidence was insufficient to sustain the verdict of the jury." *Id.* at 5, 98 S.Ct. at 2144. Reasoning from the established doctrine that double jeopardy attaches to a judgment of acquittal, the court stated that to distinguish between a judgment of acquittal and appellate reversal based on insufficient evidence "would create a purely arbitrary distinction between those in petitioner's position and others who would enjoy the benefit of a correct decision by the [trial c]ourt." *Id.* at 11, 98 S.Ct. at 2147. The Court thus held "that the Double Jeopardy Clause precludes a second trial once the reviewing court[9] has

---

9. An insufficiency finding by a habeas court under *Jackson v. Virginia*, like findings of legal insufficiency by other reviewing courts, must be given double jeopardy effect. *See Tibbs v. Florida,* 457 U.S. 31, 44–45 & n. 21, 102 S.Ct. 2211, 2219–2220 & n. 21, 72 L.Ed.2d 652 (1982). In *Tibbs,* petitioner argued that the distinction between reversal on the basis of the weight of the evidence, with no double jeopardy consequences, and reversal on the basis of legally insufficient evidence, which would invoke the double jeopardy bar, would undermine *Burks* by encouraging appellate judges to mask insufficiency reversals as weight-of-the-evidence rever-

sals. The Supreme Court responded that *Jackson v. Virginia* would place some restraints on that temptation. *Jackson v. Virginia* recognized that a federal habeas corpus court could enforce the Due Process prohibition against any conviction based on legally insufficient evidence. The clear implication of the Supreme Court's remarks in *Tibbs* is that a federal habeas corpus court's finding of insufficiency would carry double jeopardy consequences. If such were not the case, the difference between a *Jackson v. Virginia* insufficiency finding and a weight-of-the-evidence finding would be meaningless because in either case the defendant could be

found evidence legally insufficient ...."
*Id.* at 18, 98 S.Ct. at 2151.

In *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the Supreme Court held that double jeopardy principles apply to the sentencing phase of Missouri's bifurcated death penalty system.[10] Bullington was convicted in state court of a capital offense for which the state sought the death penalty. However, the jury in its discretion sentenced him to life in prison without eligibility for probation or parole for 50 years. Thereafter, Bullington was granted a new trial on the ground that his trial jury was not drawn from a fair cross-section of the community. *See Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). The state then sought to retry Bullington, and served him with a "Notice of Evidence of Aggravation," indicating that the state would again seek the death penalty on the basis of the same aggravating circumstances as were alleged in his first trial.

While acknowledging the Court's historical resistance to extending double jeopardy principles to sentencing, *see, e.g., United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Court noted that Missouri's death penalty procedures

differ[ ] significantly from those employed in any of the ... cases where the Double Jeopardy Clause has been held inapplicable to sentencing.... The presentence hearing resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence. It was itself a trial on the issue of punishment so precisely defined by the Missouri statutes.

*Bullington*, 451 U.S. at 438, 101 S.Ct. at 1858; *accord, Arizona v. Rumsey*, —— U.S. ——, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984).

■ Young's situation is different from the precise situation presented in *Bullington*, because the insufficiency finding here was originally rendered by a reviewing court, not by the sentencing jury as was the case in *Bullington*. However, we need only look to *Burks* to understand that the finding of the federal district court in Young's case that the evidence was insufficient to support the death sentence also invokes double jeopardy principles. To deny Young access to the constitutional right established in *Bullington* "would create a purely arbitrary distinction between those in [Young's] position and others who [like Bullington] enjoyed the benefit of a correct decision by the [trial c]ourt." *Burks v. United States*, 437 U.S. at 11, 98 S.Ct. at 2147. The principle of *Burks* leads us inexorably to the conclusion that *Bullington* is fully applicable to the facts of this case.[11] *Accord, Jones v. Thigpen*, 741

retried. The Fifth Circuit explained and applied this interpretation of *Tibbs* in *Carter v. Estelle*, 691 F.2d 777, 778–84 (5th Cir.1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983). In addition, the First Circuit has explicitly held that a *Jackson v. Virginia* insufficiency finding creates a double jeopardy bar under *Burks*. *Lydon v. Justices of Boston Municipal Court*, 698 F.2d 1, 2–3, 7 (1982), *rev'd on other grounds*, —— U.S. ——, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984); *cf. Greene v. Massey*, 706 F.2d 548 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 718, 79 L.Ed.2d 180 (1984).

**10.** The Missouri structure is similar to Georgia's in that the same jury makes both the guilt/innocence and sentencing phase determinations, that the jury must find at least one aggravating factor beyond a reasonable doubt, and that the jury may always sentence the defendant to life, even if it finds that the aggravating factors "out-

weigh" the mitigating factors. *Bullington v. Missouri*, 451 U.S. 430, 432–35, 101 S.Ct. 1852, 1854–56, 68 L.Ed.2d 270 (1981). The Missouri statute has certain provisions not found in the Georgia statute, *e.g.*, a specific enumeration of mitigating factors; however, the state does not argue, nor could it, that any statutory differences between the Georgia and Missouri schemes make *Bullington* inapplicable here. *Cf. Arizona v. Rumsey*, —— U.S. ——, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) (*Bullington* fully applicable where judge, not jury, makes sentencing determination).

**11.** *Green v. Zant*, 738 F.2d 1529 (11th Cir.1984), and *Zant v. Redd*, 249 Ga. 211, 290 S.E.2d 36 (1982), relied upon by the state, are inapposite. *Redd* involved an original sentencing trial in which the state relied upon three aggravating circumstances. The jury's findings listed only one of the aggravating factors in recommending

F.2d 805, 815 (5th Cir.1984) (*"Burks* inter-acts with *Bullington:* if the jury under *Bullington* or an appellate court under *Burks* finds the prosecution's evidence in support of the death penalty insufficient, the defendant cannot again be made to face a possible death sentence"). Thus, we hold that the state may not attempt to impose the death penalty on Young in his retrial.[12]

Accordingly, the district court's judgment is REVERSED, and the case is REMANDED to the district court for the issuance of an order that the state may not seek to impose the death penalty in Young's retrial.

the death sentence. After reversal on appeal for trial error, the state, at resentencing, relied upon the same three aggravating circumstances plus an additional one. The second jury's findings in recommending death listed two aggravating circumstances, including one presented but not found at the original sentencing.The Georgia Supreme Court rejected Redd's double jeopardy argument. It held that the original jury's failure to list the aggravating circumstance could not be considered an acquittal because the jury was instructed that it need only find one of the several aggravating circumstances presented. Thus, having found one aggravating circumstance, the original jury might well have simply declined to decide whether the other ones were proved. The Georgia court also declined to equate the failure to find one of several aggravating circumstances with the verdict itself, which was accorded double jeopardy effect in *Bullington.*

Although *Green* involved facts even more remote from the instant case than *Redd,* this court approved the rationale of *Redd.*

The instant case does not involve the mere failure of one of several aggravating circumstances. Here, there was legally insufficient evidence with respect to the only aggravating circumstances presented to the jury. Thus, the death sentence itself fell for lack of legally sufficient evidence. This situation *is* comparable to the verdict itself, which was accorded double jeopardy significance in *Bullington. See Green v. Zant,* 738 F.2d at 1541.

12. The state argues that even if we find that imposition of the death penalty is barred with respect to the two aggravating factors alleged in Young's first trial, the state may still seek the death penalty on the basis of a "new" aggravating factor, Ga.Code Ann. § 17–10–30(b)(7) (in-

volving whether the murder was "outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim"). We disagree.

*Bullington* is based on the notion that, after the equivalent of a judgment of acquittal, a defendant must not be forced to run the gauntlet and stand trial for his life again. Although *Bullington* involved an attempt at retrial based upon the same aggravating factors used in the original trial, its holding is explicitly not limited to such a circumstance. The court said that our decision today does not at all depend upon the State's announced intention to rely only upon the same aggravating circumstances it sought to prove at petitioner's first trial or upon its statement that it would introduce no new evidence in support of its contention that petitioner deserves the death penalty. Having received "one fair opportunity to offer whatever it could assemble," *Burks v. United States* . . . , the state is not entitled to another. 451 U.S. at 446, 101 S.Ct. at 1862. The above quotation from *Bullington* also disposes of the ground upon which the district court apparently relied in its most recent opinion, declining to find double jeopardy effect. The district court apparently interpreted its original insufficiency holding as meaning "not that there was insufficient evidence to support the death sentence but rather that the evidence was not sufficient to support the death penalty based on the particular aggravating circumstances relied on by the district attorney." *Young II,* 585 F.Supp. at 299. As the above-quoted language from *Bullington* makes clear, having elected to rely on the two aggravating circumstances at Young's original sentencing trial, and having failed to adduce legally sufficient evidence to support a death sentence on those aggravating circumstances, the state is not entitled to a second attempt.